876 A.2d 346

**STREET ROAD BAR & GRILLE, INC., Appellee,**

**v.**

**PENNSYLVANIA LIQUOR CONTROL BOARD, Appellant.**

**No. 253 MAP 2003.**

Supreme Court of Pennsylvania.

Argued April 14, 2004.

Decided June 20, 2005.

---

74

Faith Smith Diehl, Esq., David Brian Schlechter, Esq., Harrisburg, for Pennsylvania Liquor Control Board.

Barry Goldstein, Esq., Douglas Maloney, Esq., Langhorne, for Street Road Bar & Grille, Inc.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice CASTILLE.

This appeal presents two questions: (1) which party—the liquor license applicant or the Pennsylvania Liquor Control Board ("the Board")—bears the burden of proof concerning an applicants "good repute" for purposes of issuing or transferring a license; and (2) whether, in deciding the question of good repute, the Board may consider an applicants (a) past history of citations under the Liquor Code[1] and (b) past criminal misdemeanor convictions.[2] In sustaining the Board's denial of the request by appellee, Street Road Bar & Grille, Inc., for a person-to-person transfer of a liquor license, the trial court held that the Board did not err in finding that appellee's officers were not persons of good repute under the Liquor Code, given their prior convictions and extensive citation history. A divided Commonwealth Court panel reversed, holding that the Board had the burden of establishing a lack of good repute, that an applicant's criminal and citation history are irrelevant to a determination of good repute, and that the Board had failed to produce relevant evidence to prove lack of good repute. For the following reasons, we find that the liquor license applicant bears the burden of proof concerning good repute and that the Board and the trial court properly determined that citation history and prior misdemeanor con-

---

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. 1–101–8–803.

2. We have re-ordered the issues presented for the sake of clarity.

victions are relevant to the question of good repute. Accordingly, we reverse the order of the Commonwealth Court.

William L. Golden, III, and Thomas Golden are brothers who own and operate appellee bar and restaurant, which is located in Bensalem Township, Bucks County, Pennsylvania. William is listed as president, director and stockholder, while Thomas is listed as the secretary/treasurer, director, stockholder and manager. At the time of the hearing below, William had been involved in the restaurant, bar and liquor business for approximately twenty-four years and had been approved for twelve liquor licenses. Thomas had been in the bar and restaurant business for approximately seventeen years and had been approved for four or five liquor licenses.

On January 19, 2001, appellee applied to the Board for a person-to-person transfer of a liquor license. Pursuant to its authority under Section 464 of the Liquor Code, the Boards Bureau of Licensing ultimately scheduled a hearing with respect to objections it had regarding the application including, *inter alia,* whether the Goldens were responsible and reputable individuals as required under Section 404 of the Liquor Code in light of citations issued to other licensed establishments that they had owned or operated, and in light of their history of misdemeanor convictions.[3] Section 404 provides, in pertinent part, as follows:

Upon receipt of the application and the proper fees, and upon being satisfied of the truth of the statements in the application that the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed and that no other person will be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter permitted, and that the applicant is a person of good repute, that the premises applied for meet all the requirements of this act and the regulations of the board, that the applicant seeks a license for a hotel, restaurant or club, as defined in this act, and that the issuance of such license is not prohibited by any of the

3. The Board lodged three other objections which are not at issue in this appeal.

provisions of this act, the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club may, in its discretion, issue or refuse a license: [Provided, however, that, *inter alia,*] the board shall have the discretion to refuse a license to any person or to any corporation, partnership or association if such person, or any officer or director of such corporation, or any member or partner of such partnership or association shall have been convicted or found guilty of a felony within a period of five years immediately preceding the date of application for the said license.

47 P.S. 4–404.

The evidence at the hearing established that, over the years, licensed establishments in which the Goldens were involved had been cited 21 times for various violations of the Liquor Code, including citations for sales to minors; loud noise/loudspeaker violations; bounced check charges; providing false information on a Sunday Sales Permit application; failing to maintain complete business operating records; discounting the price of alcohol; and permitting minors to frequent the premises. The 21 citations resulted in over $8,000 in civil penalties, seven license suspensions, and the revocation of a Sunday Sales Permit. The Goldens had also been principals in other licensed establishments which had not been cited for Liquor Code violations.

The evidence also established that both Goldens had misdemeanor criminal records. William was convicted of theft in 1976, and simple assault, a second-degree misdemeanor, in 1989. In 1990, Thomas was convicted of driving under the influence, a second-degree misdemeanor. In addition, in 1996, both William and Thomas were convicted of gambling and conspiracy arising from the use of video slot or poker machines at one of their licensed establishments, Skinny Dugan's, Inc. The gambling convictions were graded as first-degree misdemeanors.

Following the hearing, the Board denied appellees transfer application, finding that the Goldens were not "persons of

good repute" for purposes of Section 404. The Board later filed a 30–page opinion in support of its conclusion. The Board summarized in great detail its prior history and familiarity with the Goldens involving their other liquor licenses and prior citations. The Board also noted the Goldens' prior convictions. In the Boards view, there was "no question" that, in the context of a liquor license transfer, an applicants prior operational history, including a history of Liquor Code violations and citations, is relevant to the question of good repute. The Board noted that:

> For these unlawful acts, the Goldens' licenses have incurred various penalties. While William Golden, III correctly testified that no license has ever been revoked, the licenses had received over $8,000.00 in fines, seven license suspensions, and the revocation of a Sunday Sales Permit. Further, one license was warned not once, but twice, to improve its operation or risk loss of its license in a nuisance bar action. In all but two of the citations, the charges were not even contested, and William Golden's attitude towards these citations at the administrative hearing held in this case appeared to be unapologetic; he was either "not present" when the violations occurred, or felt that some of the charges resulted from downturns in business or were not worth fighting. He offered no explanation at all about how or why the many sales to minors occurred, other than his opinion that those types of charges cannot ever be won if contested. The Board finds this lack of acknowledgment of his responsibility to abide by the liquor laws in the past to be indicative of future disregard of those same laws.

Opinion, 24–25.

The Board next noted that it properly considered the Goldens' misdemeanor convictions in making its overall assessment of good repute. The Board was particularly concerned with the fact that both brothers had multiple criminal convictions, and that their latest convictions for gambling and conspiracy arose from events that occurred on the very premises of licensed establishments in which they were involved as principals. The Board then concluded as follows:

Adding the Goldens' prior convictions to the evidence of multiple and in many cases, very serious, citations that have accumulated at their other licensed premises over the last decade or so, the Board simply is not satisfied that the Goldens, and thus Applicant, are persons of good repute, as required by section 404 of the Liquor Code. They have demonstrated a disregard of both the liquor laws and the criminal laws of the Commonwealth, as evidenced by repeated citations for sales to minors, permitting minors to frequent, bounced checks, falsification of an application, and other unlawful acts, and by their past criminal convictions, especially using three of their licensed establishments as gambling venues. Thus, the Boards inability to find the Goldens to be persons of good repute precludes the approval of this application.

*Id.* at 26–27.[4]

Appellee appealed to the trial court. Following a *de novo* hearing, the trial court affirmed, citing with approval to the Boards analysis. The court noted the Goldens' extensive operational history with the Board and their "sizeable citation history." In light of that citation history, the court reasoned that the Goldens had failed to demonstrate past compliance with the Liquor Code. The court also agreed with the Board that the Goldens' previous convictions, though misdemeanors, were relevant to the question of good repute. Like the Board, the trial court was particularly concerned with the convictions for gambling and conspiracy. In the trial courts view, the

---

4. At the time its decision in this case was rendered, the Board had promulgated no formal regulation concerning the role of citation history and criminal records in the licensing process. During the pendency of this litigation, however, the Board has adopted the following regulation:

§ 1.5 **Reputation: Use of criminal and citation history.**
When considering whether a person is reputable or the repute of a person under any section of the Liquor Code or this title, the Board may consider whether that person has been convicted of any crimes including misdemeanors and felonies, the person's history regarding licenses issued by the Board, including the citation history of the licensee, and any other factor the Board deems appropriate.
40 Pa.Code § 1.5 (adopted November 12, 2004, effective November 13, 2004). The regulation does not apply to this litigation.

Board did not err in finding itself unsatisfied that the Goldens were persons of good repute, given their citation history and prior convictions. Trial court op. at 2–4.

Appellee next appealed to the Commonwealth Court, raising two issues. First, appellee raised a sufficiency claim, arguing that the record established that the Goldens were persons of good repute for purposes of Section 404. Second, appellee alleged that, in finding that the Goldens were not persons of good repute, the trial court confused the issue of character with repute, and improperly construed specific instances of wrongdoing as bearing upon repute. A divided panel of the Commonwealth Court vacated and remanded in a memorandum opinion by the Honorable Mary Hannah Leavitt, which was joined by the Honorable James R. Kelly.[5]

The panel majority noted that the Liquor Code does not define the term "good repute" employed in Section 404, and thus, under the Statutory Construction Act, the term had to be construed according to its common and approved usage. *See* 1 Pa.C.S.1903(a). Invoking dictionary definitions, the majority concluded that the Board had the burden of proving that the Goldens "do not have a good reputation among the community" in order to justify denying the license transfer under the statute's good repute provision. Slip op. at 7, *citing* BLACK's LAW DICTIONARY 1303 (6th ed.1990) (defining "repute," in part, as "reputation or the character and status commonly ascribed to one's actions by the public") and WEBSTER's THIRD INTERNATIONAL DICTIONARY 1929 (2002) (defining "repute" as "the character or status commonly ascribed to one: the popular opinion of one: reputation of a specific kind.").

The majority then reviewed the evidence the Goldens had produced concerning good repute, which consisted of their own testimony. William Golden testified that he had been a member of his church for five years; that he was a member of the Catholic Youth Organization and had coached basketball for two years and soccer for two years; that he had also coached basketball for the Pennsbury Athletic Association for eight

5. The Honorable Dan Pellegrini noted his dissent without opinion.

years; that he had served as the Secretary of the Bucks County Tavern Association and as a director of the Bucks County Handicapped Council; and that, since 1976, he had been a licensed real estate broker and had never had that license suspended or revoked. Thomas Golden testified that he was a member of his church; and that he had coached two basketball teams for nine years in the Pennsbury Athletic Association. The majority opined that the Goldens' testimony supported a finding of good reputation in the community because the organizations in which they were involved presumably would not have permitted them to accept leadership roles if they had had poor reputations. The majority noted that, while the Goldens' testimony was not the strongest evidence of good repute, it was sufficient given the absence of Board regulations specifying what evidence was necessary and appropriate to show good repute. Slip op. at 8.[6]

The majority then dismissed the evidence relied upon by the Board—*i.e.,* the Goldens' citation history and their prior misdemeanor convictions—holding that these circumstances were irrelevant as a matter of law to the question of good repute. In the majority's view, the citations were irrelevant for reasons which, although it is not entirely clear, call to mind notions of double jeopardy. Without citing to any authority, the majority reasoned that, because the citations had been resolved by sanctions, to consider them in the transfer process would improperly allow the citations to be "used twice" and to "have force and effect even after they were closed by the imposition of sanctions." The criminal histories were deemed irrelevant because, in the majority's view, those records somehow related only to character and not to reputation in the community. Slip op. at 8–9.

The majority found support for its conclusion concerning both the burden of proof and the merits in *Global Beer Distributing, Ltd. v. Pennsylvania Liquor Control Board,* 800

---

6. We note that there is no issue presented on this appeal concerning the propriety of the Commonwealth Court's determination that the Goldens' self-serving testimony concerning their community activities was relevant to establish good repute.

A.2d 387 (Pa.Cmwlth.2002), a case in which the court affirmed a finding that the applicant's corporate officer was a "reputable person" under Section 431(b) of the Liquor Code, despite his various misdemeanor convictions.[7] The corporate officer presented testimony from various witnesses to the effect that he was a reputable member of the community, as well as evidence that he had not been convicted of a felony within the past five years. The *Global Beer Distributing* panel held that the misdemeanor convictions could not be considered on the question of repute and granted the application for a double license transfer. The panel majority in the case *sub judice* stated that, although the instant matter involved Section 404 of the Liquor Code rather than Section 431, *Global Beer Distributing* was persuasive because the language in both sections leaves it to the Board's discretion to approve or disapprove a license transfer request. Slip op. at 9–11.

Finally, the majority found that the Board's reliance upon the Goldens' misdemeanor convictions was a pretext for circumventing the Liquor Code's directive which vested discretionary authority in the Board to consider only felony convictions less than five years old when considering liquor license transfers. Because the Board produced no evidence that the misdemeanors affected the Goldens' reputation in their community, the majority reasoned that the Board had failed to prove that the Goldens were not persons of good repute. Accordingly, the majority vacated the trial court's finding that the license transfer had been properly denied, and remanded the matter to consider other objections raised by the Board which the trial court had not considered, given its disposition. Slip op. at 11–12.

This Court granted further review to consider the propriety of the Commonwealth Court's legal conclusions that the Board has the burden of proving an applicant's lack of good repute, and that an applicant's citation history and prior misdemeanor convictions are irrelevant to the question of good repute.

7. Section 431(b) of the Liquor Code governs issuance of a distributor's or importing distributor's license for malt or brewed beverages, and requires that the applicant be a "reputable" person. 47 P.S. 4–431(b).

 As a preliminary matter, we note that it is clear that the state may outright forbid the sale of intoxicating liquors and, if it decides to permit their sale, the state generally may impose such conditions as it sees fit. *Replogle v. Commonwealth, Pennsylvania Liquor Control Bd.*, 514 Pa. 209, 523 A.2d 327, 330 (1987). Thus, one who secures a liquor license is deemed to consent to all proper conditions and restrictions which have been or may be imposed by the General Assembly in the interest of public morals or safety. *Id., citing Tahiti Bar, Inc. Liquor License Case*, 395 Pa. 355, 150 A.2d 112, 117 (1959) (further citation omitted). Review in an appeal from a trial court's decision following a *de novo* hearing on a request to transfer a liquor license is limited to a determination of whether the trial court's findings are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Global Beer Distributing*, 800 A.2d 387. Here, the material facts are undisputed and the issues involve the proper interpretation of the governing statute, as the statute bears upon the burden of proof and the admissibility of evidence to prove lack of good repute. As the issues present themselves herein, these are questions of law as to which this Courts review is plenary. *See Commonwealth v. Gilmour Mfg. Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003) (citation omitted).

 In matters of statutory interpretation, the principles governing this Courts review are well-settled. The object of interpretation and construction of Pennsylvania statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. § 1501 *et seq.* In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa.C.S. § 1903(a). When the words of a statute are clear and free from all ambiguity, that plain language is generally the best indication of legislative intent. *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 835 (2002); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84, 87 (1995); 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free

from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). It is only when "the words of the statute are not explicit" on the point at issue that resort to statutory construction is appropriate. 1 Pa.C.S. § 1921(c); *see also Commonwealth v. Packer*, 568 Pa. 481, 798 A.2d 192, 196 (2002). In such an instance, the intention of the General Assembly "may be ascertained by considering, among other matters:"

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c). Finally, the Statutory Construction Act "requires a presumption that the General Assembly did not intend a result that is absurd or unreasonable." *Allegheny County Sportsmen's League v. Rendell*, 860 A.2d 10, 15–16 (Pa.2004), *citing* 1 Pa.C.S. § 1922(1) (presumption in "ascertaining the intention of the General Assembly in the enactment of a statute" is that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable").

■ The Board first argues that the Commonwealth Court erred in holding that it has the burden of proving lack of good repute in order to deny a liquor license transfer on those grounds. The Board notes that the plain language of Section 404 provides that the Board shall grant and issue a liquor license to an applicant only "upon . . . being satisfied" that, among other things, the applicant is a person of good repute. The Board argues that the fact that the process is initiated by the applicant, and that it is the Board which must be "satisfied" that the applicant qualifies for a license, clearly suggests

that the burden is upon the applicant. The Board further notes that, in passing upon liquor license applications it has historically interpreted Section 404 as placing the burden upon the applicant, and it submits that this Court should give controlling weight to its administrative interpretation. Finally, the Board notes that its interpretation is consistent with prior decisions from both the Commonwealth Court and the Superior Court. *See In re Giannilli*, 82 Pa.Cmwlth. 142, 474 A.2d 738, 740 (Pa.Cmwlth.1984) (applicant for restaurant liquor license under "resort area" exception had burden of proving that premises were in resort area and that there was an actual need for license in that area); *In re Rydewski's Appeal*, 121 Pa.Super. 171, 183 A. 437, 438 (Pa.Super.1936) (applicant for restaurant liquor license had burden of satisfying Board that he was "a person of good repute" and sought "license for a hotel, restaurant or club as defined in th[e] act"). Appellee does not dispute the Board's argument; indeed, it forwards no argument at all on the question of which party bears the burden of proof under Section 404.

We agree with the Board and hold that Section 404 clearly contemplates that the applicant has the burden of proving "good repute." The General Assembly, which has opted to permit the sale of liquor in Pennsylvania, has determined that the process of securing or transferring a liquor license is to be initiated by the prospective license holder, who must file an application along with the required fees. Under Section 404, the Board is initially involved not as a quasi-prosecutor or even as an adverse party, but in a capacity of evaluation and determination. Upon receipt of the application and fees, the Board is obliged to issue a license only if it is "satisfied" both that the statements in the application are truthful and that certain enumerated conditions are established, including that the applicant is a person of good repute. The statute does not state that applicants are presumed to be of good repute, such that the Board is in a position of rebuttal; rather, the determination of good repute is a matter vested in the discretion of the Board, a discretion which is triggered by review of the application. By holding that the Board has the burden of

disproving good repute, the Commonwealth Court essentially read into Section 404 a presumption of good repute which is not found in the statutory text.[8,9]

■ The Board next claims that the Commonwealth Court erred in deeming irrelevant to the question of the applicant's good repute the Board's history with the liquor license applicant, including the corporate officers' Liquor Code citation history and their misdemeanor criminal convictions. The Board first cites the general proposition that the test for relevancy is a liberal one: thus, under the Pennsylvania Rules of Evidence, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Pa.R.E. 401. The Board further notes that, in the administrative context, the evidentiary standard is relaxed; thus, Section 505 of the Administrative Agency Law provides that "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received." 2 Pa.C.S. § 505.

8. This Court's reading of the statute, though not commanded by the Board's identical administrative interpretation, is nevertheless buttressed by it. *See* 1 Pa.C.S. § 1921(c)(8) (noting proper role of legislative and administrative interpretations of statute in ascertaining legislative intent). Administrative interpretations of a statute are entitled to deference, at least so long as they are consistent with legislative intent. *Gilmour Manufacturing*, 822 A.2d at 679 (interpretation of agency charged with administration of act is entitled to some deference, albeit an interpretation which is unwise or violative of legislative intent should be disregarded); *Pennsylvania Liquor Control Bd. v. Richard E. Craft American Legion Home Corp.*, 553 Pa. 99, 718 A.2d 276, 278 (1998) (Board's interpretation of Liquor Code entitled to deference unless clearly erroneous), *citing American Airlines, Inc. v. Commonwealth, Bd. of Finance and Revenue*, 542 Pa. 1, 665 A.2d 417, 420 (1995) (administrative agency's interpretation of statute given controlling weight unless clearly erroneous).

9. The Commonwealth Courts reliance upon its decision in *Global Beer Distributing, supra,* for the proposition that the Board has the burden of establishing a lack of good repute is misplaced. *Global Beer Distributing* did not hold that the Board had the burden to show that an individual is not reputable; rather, the panel there merely upheld the trial courts determination that the applicant had demonstrated good repute.

On the question of the relevance of an applicant's citation history, the Board disputes the Commonwealth Court's holding that consideration of "resolved" citations in the transfer process would somehow amount to a prohibited form of double jeopardy in the context of licensure. The Board correctly notes that there is a wealth of case law to the contrary, holding that double jeopardy concerns do not apply in proceedings, such as this, which are of a civil nature. *See, e.g., Atiyeh v. Pennsylvania Liquor Control Bd.*, 157 Pa.Cmwlth. 28, 629 A.2d 182, 183 (1993); *Slovak–American Citizens Club v. Pennsylvania Liquor Control Bd.*, 120 Pa.Cmwlth. 528, 549 A.2d 251, 255 (1988). At a minimum, the Board says, the panel's holding in this case is contrary to Commonwealth Court precedent.

The Board also emphasizes the legislative command that every section of the Liquor Code is to be construed liberally "for the protection of the public welfare, health, peace and morals of the people of the Commonwealth." 47 P.S. § 1–104(a). The Board maintains that, if this statutory mandate is to mean anything, the Board must be permitted to consider both the citation and criminal history of applicants for liquor licenses or license transfers. In this regard, the Board notes that this Court has recognized that, in light of the "peculiar nature" of this particular type of business endeavor, a person "who applies for and receives permission from the Commonwealth to carry on the liquor trade assumes the highest degree of responsibility to his fellow citizens." Brief for Appellant, 23, *quoting Commonwealth v. Koczwara*, 397 Pa. 575, 155 A.2d 825, 828 (1959). This Court noted in *Koczwara* that such a licensee:

> is under a duty not only to regulate his own personal conduct in a manner consistent with the permit he has received, but also to control the acts and conduct of any employee to whom he entrusts the sale of liquor. Such fealty is the *quid pro quo* which the Commonwealth demands in return for the privilege of entering the highly

restricted and, what is more important, the highly *danger-ous* business of selling intoxicating liquor.

155 A.2d at 828 (emphasis in original).

As for the relevance of an applicant's misdemeanor criminal history, the Board notes that the Rules of Evidence permit the use of specific instances of conduct "to prove character or a trait of character." Pa.R.E. 405(b)(1). The Board submits that criminal convictions are, at a minimum, "reasonably pro-bative" of the question of whether an individual is reputable. Citing to a broad range of cases, the Board argues that criminal convictions have at least some impact upon measuring a person's reputation, the degree of the impact being a question of the relative seriousness of the offense and the character trait in question. The Board submits that the Commonwealth Court erred to the extent it deemed misde-meanor convictions to be irrelevant because they supposedly speak exclusively to "character," and never to "reputation." The Board also cites cases from both the Commonwealth Court and the Superior Court which have held that prior misdemeanor convictions are at least relevant to the question of whether a person is reputable. *See Appeal of Irene's Café,* 44 Pa.Cmwlth. 20, 404 A.2d 707, 709 (1979) (misdemeanor convictions deemed relevant to repute for purposes of Board's requested approval of manager of licensed premises); *Com-monwealth v. Lyons,* 142 Pa.Super. 54, 15 A.2d 851, 852 (1940) (license revocation case; holding that, although specific acts of misconduct are inadmissible to prove bad general reputation in criminal actions, liquor license revocation proceeding is not a criminal action where proof of general reputation is treated as substantive evidence going to guilt or innocence; thus, previous convictions had material bearing on question of re-pute). Because an applicant's criminal history is at least probative of his "repute," the Board argues, the Common-wealth Court erred in dismissing such history as irrelevant as a matter of law.

■ Appellee responds, first, with a peremptory argument which this Court must examine before passing on the Board's complaints. Appellee contends that the Board's position ig-

nores the more fundamental fact that Street Road Bar & Grille is a corporate applicant, and thus the Board's proof below and its argument here—concerning whether the Goldens were persons of good repute, and what evidence is admissible to prove their repute—is misplaced. Appellee argues that, in cases where a corporation is the liquor license applicant, it is a latter part of Section 404 which governs; and that provision states only that the Board has discretion to refuse a license if "any officer or director of such corporation, or any member or partner of such partnership or association shall have been convicted or found guilty of a felony within a period of five (5) years immediately predating the date of application for the said license." 47 P.S. § 4-404. In its Reply Brief, the Board responds by noting, *inter alia*, that this corporation-based argument is waived, as appellee did not raise it below. We must agree with the Board. We have reviewed the briefs filed in the Commonwealth Court and appellee never raised this distinct claim. Accordingly, it is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *In re Nader*, 858 A.2d 1167, 1181 n. 18 (Pa.2004).

Turning to appellee's argument on the preserved issues raised by the Board, with respect to the relevance of the Goldens' Liquor Code citation history, appellee argues that there were extenuating circumstances attending various of the citations. Thus, appellee submits that the violations were largely by employees of the corporate entity and emphasizes that, notwithstanding the citations, none of the Goldens' previous liquor licenses had ever been revoked or rescinded. Appellee argues that in light of these circumstances, the citations do not prove that the Goldens are persons lacking "good repute" such that the license transfer was properly denied. Notably, for purposes of the legal question accepted for review by this Court, appellee does not dispute that citation history is a **relevant** consideration on the question of good repute; instead, its argument largely goes to the weight that should be accorded that evidence. Nor does appellee attempt to defend the Commonwealth Court's reasoning that double jeopardy-

related concerns somehow prohibit consideration of "settled" citations in assessing the entitlement to a liquor license transfer.

With respect to the relevance of prior misdemeanor convictions, appellee echoes the analysis of the Commonwealth Court panel majority, emphasizing a clear distinction between character and reputation, and arguing that the misdemeanor convictions do not bear upon reputation in the community. Appellee then stresses the Goldens' testimony concerning their community involvement, and the absence of Board evidence concerning their reputations, as opposed to instances of conduct reflected in citations and convictions. Appellee also echoes the Commonwealth Court's suggestion that the Liquor Code does not authorize denial of a license application premised upon misdemeanor convictions of corporate officers. With respect to the Board's argument that criminal convictions can affect a person's reputation, appellee concedes that point as a general matter, but then argues that the question here is whether in fact the Goldens' reputations were so affected. Appellee then notes that no evidence was presented to suggest that persons in the Goldens' community were even aware of their convictions, much less how that awareness affected their estimation of the brothers' reputations.

Bearing in mind the legislative proscription against interpreting a statute in a way that would lead to absurd or unreasonable results, the broad definition of relevance, and the relaxed evidentiary standards attending agency review, we have no difficulty in finding that the Commonwealth Court erred in holding that the Goldens' citation history and misdemeanor records were irrelevant. The requirement that the applicant for various forms of liquor licenses or permits be a "reputable person" or person of "good repute," or that the establishment to be operated be a reputable one, is common throughout the Liquor Code. *See, e.g.,* 47 Pa.C.S. §§ 1–102, 2–207, 4–431, 4–432, 4–433, 4–437, 4–461, 7–703. The Code offers no explicit guidance on factors that may be deemed pertinent to assessing repute, and thus we are left to examine the common usage of the word. As commonly understood,

repute is the account or consideration of a person held by others, *i.e.,* what people think of another, reputation. However, this Court has noted that, in common parlance,

> [t]he word "character" is frequently used interchangeably with the word "reputation." In a legal sense it means "reputation" as distinguished from "disposition." Character grows out of particular acts, but is not proved by them, inasmuch as a person may under the stress of special circumstances do a thing which is contrary to his ordinary disposition and practice. The method of proving character is by showing the general reputation of the person in the neighborhood in which he lives. What is proven, therefore, is not a person's real character, but his character as reputed among his neighbors, or what the consensus of opinion of the neighbors is as to his character.

*Commonwealth v. Webb,* 252 Pa. 187, 97 A. 189, 196 (1916).

The cases articulating a strict legal distinction between character and reputation evidence typically arise in the criminal law where the evidence is proffered for substantive purposes, *i.e.,* the defendant tries to show that his general character for a pertinent trait implicated by the crime at issue is such that it is less likely that he would commit the charged crime. *See generally Commonwealth v. Fulton,* 574 Pa. 282, 830 A.2d 567, 572–73 (2003) (plurality opinion); *id.* at 577–78 (Saylor, J., dissenting).[10] We would not read too much into the necessarily fine lines that have been drawn in that area in order to assess properly the General Assembly's use of "repute" as grounds for restricting the persons and establishments to whom a liquor license may be issued. There is no indication in the Liquor Code that the General Assembly intended the term in a technical legal sense, *i.e.,* barring evidence of instances revealing "character" in exclusive favor of classic reputation testimony. Indeed, the statute, which was enacted shortly after Prohibition ended, employs language which harkens back to a simpler time and may even seem

---

**10.** A testifying defendant in a criminal prosecution may also introduce evidence of good character for the trait of truthfulness if his veracity has been placed in issue. *See id.*

somewhat quaint or casual today. But we have no doubt that it had an obvious and important meaning when enacted in the wake of Prohibition, an era during which the distribution of alcohol was in the hands of decidedly "disreputable" persons, acting illegally. This may well explain why the General Assembly saw no need to define the term further.

For this Court's present consideration, what matters more is that the question is one of mere relevance for purposes of the Board's administrative determination. In this regard, we believe the Board rightly considered prior instances of conduct known (or knowable) to the Board, such as the applicant's citation history and prior convictions, to be relevant to the applicant's burden to show good repute. The "repute" of which the Code speaks can only be understood in terms of the purpose for which repute is to be considered, *i.e.*, to determine if issuance of a liquor license is appropriate. The question for the Board cannot be whether the applicant has a localized reputation as a "good guy" generally. Logically, the General Assembly was concerned with repute as it may be relevant to the responsibility which is a necessary concomitant of the privilege represented by the license, *i.e.*, the "highest degree of responsibility [owed] to [one's] fellow citizens" which is assumed along with the license. *Koczwara*, 155 A.2d at 828. The applicant's citation history in connection with other liquor licenses is extremely probative in order to accurately measure whether a person (or establishment) is reputable. A history of citations, and a consideration of the appropriateness of the applicant's response to those citations, may suggest a lack of regard for the liquor laws. A person lacking in such regard can hardly be deemed a person of good repute for purposes of securing a liquor license.

Moreover, it would be absurd and unreasonable to require the Board to turn a blind eye to an applicant's citation history in an instance, such as this one, involving the transfer of a license where the person or persons behind the application have a history in connection with other liquor licenses. In such instances, the applicant will usually have some history with the Board, whether good or bad. Arguably, the single most important factor in assessing fitness for the privilege of

licensure is the applicant's Liquor Code performance and compliance in the past. Where the question is repute for purposes of liquor licensure, the applicant's past Liquor Code performance is, at a minimum, "reasonably probative."

In addition, even if we believed that the General Assembly intended for "repute" to be considered subject to the reputation/character distinction that has evolved (largely) in the criminal law, we note that the instances of conduct which are reflected in the Goldens' Liquor Code citations would be probative for purposes of impeachment or rebuttal. Thus, consider if, instead of their own testimony, the Goldens had proffered classic reputation evidence—*i.e.*, testimony from friends and neighbors concerning their reputation in the relevant community for traits of character which are implicated in running a licensed liquor establishment. Presumably, those traits would include law abidingness. Such character witnesses could certainly be impeached with specific instances of conduct, including previous Liquor Code citations, in order to call into question their qualifications to speak for the community on the issue, *i.e.*, their basis of knowledge of the person or trait and the standard by which they measure reputation. *See* Pa.R.E. 405(a) ("On cross-examination of the reputation witness, inquiry is allowable into specific instances of conduct probative of the character trait in question, except that in criminal cases inquiry into allegations of other criminal misconduct of the accused is not permissible."); *id.* Rule 405(b)(1) ("In civil cases where character or a trait of character is admissible as an element of a claim or defense, character may be proved by specific instances of conduct"). As the U.S. Supreme Court has noted in the context of impeaching character witnesses with evidence of arrests, "If one never heard the speculations and rumors in which even one's friends indulge upon his arrest, the jury may doubt whether he is capable of giving any very reliable conclusions as to his reputation." *Michelson v. United States*, 335 U.S. 469, 483, 69 S.Ct. 213, 93 L.Ed. 168 (1948).[11] *See also* 1 John W. Strong et al., *McCor-*

11. As a matter of state evidentiary law, this Court has barred the use of mere arrests for such impeachment. *See Commonwealth v. Scott,* 496 Pa. 188, 436 A.2d 607, 611–12 (1981).

*mick on Evidence,* § 191, at 676–77 n. 27 (5th edition 1999) ("The logic of this form of impeachment is that since the crimes occurred, they caused community talk, but either (a) the witness has not heard it, which shows his ignorance of defendant's true reputation, or (b) the witness has heard of it but is dissembling or else applying a low standard of 'goodness' ") (citing *Michelson*). As with other forms of impeachment, successful impeachment of reputation evidence is a valid basis for a factfinder to reject the evidence.

By the same token, and for the same reasons, it is apparent that the misdemeanor criminal record of a liquor license applicant is relevant to an accurate assessment of reputation. Even accepting for purposes of this decision that the Board would lack authority to deny a liquor license on the basis of misdemeanor convictions **alone** (given that the statute lists felony convictions as a disqualifier which is separate and distinct from the repute disqualifier), misdemeanor convictions surely are reasonably probative of repute. Certainly, there is nothing in Section 404 that prohibits the Board from considering misdemeanor convictions when deciding good repute. Like prior Liquor Code violations, misdemeanor convictions speak to the applicant's law-abiding character. There is a particular relevance in the Goldens' gambling convictions, since they arose in connection with a licensed establishment.

Finally, we reject the Commonwealth Court's unsupported "double jeopardy" basis for deeming past citation history irrelevant. As noted, the Commonwealth Court cited no authority in support of this proposition, and appellee does not attempt to defend the theory here. Notably, it is a theory which was rejected in previous Commonwealth Court decisions, decisions the panel below did not acknowledge or attempt to distinguish. Thus, in *Atiyeh v. Pennsylvania Liquor Control Bd.,* 157 Pa.Cmwlth. 28, 629 A.2d 182 (1993), a license renewal case, the court explicitly rejected the licensee's argument that the Board should not have considered two citations which had been adjudicated because the licensee had already paid the penalty for those violations. The court rejected the argument, and held that double jeopardy concerns are not

triggered by proceedings that are civil in nature. The *Atiyeh* court further held that "[a]lthough penalties may have been imposed and satisfied for individual violations, it is not improper for the LCB to look at a pattern of violations for which penalties have already been paid in deciding whether to renew a license." *Id.* at 183.

 Similarly, in *Slovak–American Citizens Club of Oakview v. Commonwealth, Pennsylvania Liquor Control Bd.,* 120 Pa.Cmwlth. 528, 549 A.2d 251 (1988), a license suspension and revocation case, the court rejected the licensee's double jeopardy argument, employing the following analysis:

> Double jeopardy is activated to bar appeal to this Court only where a trial court judgment of acquittal on the merits concludes proceedings criminal in nature. *See Borough of West Chester v. Lal,* 517 Pa. 626, 538 A.2d 879 (1987). As the instant proceedings are civil in nature and not penal, double jeopardy is inapplicable. *Tahiti Bar, Inc.,* [150 A.2d 112 (1959) ].

*Id.* at 255 (footnote omitted). Absent compelling argument to the contrary, we agree with *Atiyeh* and *Slovak–American* that notions of double jeopardy do not bar consideration of "settled" citations in a civil proceeding where the question is the propriety of awarding a liquor license. The fact that the prior citations resulted in paid fines does not serve to expunge the violations, any more than service of a sentence would serve to expunge a conviction. The fact of the violations are probative of the character and reputation of the violator.

For the foregoing reasons, we reverse the order of the Commonwealth Court.

Madame Justice Newman did not participate in the consideration or decision of this case.