**Rutch v. Pennsylvania Liquor Control Board**

C.P. of Carbon County, no. 06-3438.

*Robert T. Yurchak,* for plaintiff.
*James F. Maher,* for defendant.

NANOVIC, *P.J.,* December 17, 2008—Eugene A. Rutch t/a M.J.'s Cocktail Lounge, appeals from the Pennsylvania Liquor Control Board's denial of his application to renew the liquor license for M.J.'s Cocktail Lounge, a bar and restaurant located at 106 East Catawissa Street, Nesquehoning, Carbon County, Pennsylvania.

The primary issue before us is whether Rutch is a person of good repute within the meaning of the Liquor Code 47 P.S. §§1-101—8-803, the basis of the board's denial of Rutch's renewal application.

## FACTUAL AND PROCEDURAL BACKGROUND

Rutch is the owner, operator and sole employee of M.J.'s Cocktail Lounge. Rutch has held a restaurant liquor license in his name for this establishment since July 1991. The business is operated as a sole proprietorship.

On June 30, 2004, Rutch applied to renew the liquor license for M.J.'s for the licensing period beginning September 1, 2004, and ending August 31, 2006. By letter dated August 20, 2004, the board's Bureau of Licensing advised Rutch pursuant to section 470 of the code that it objected to the renewal of his liquor license, finding, on the basis of his citation history and prior criminal record, that he was no longer reputable as required by sections 102, 404 and 470 of the code, 47 P.S. §§1-102, 4-404, and 4-470.[1]

---

1. This letter provided Rutch with notice of the following specific objections upon which the board relied:

"(1) Rutch's conviction on June 9, 2000, of two counts of driving under the influence, misdemeanors of the second degree, arising out of an incident which occurred on September 12, 1999. The record of these proceedings is docketed to no. 084 CR 2000 in the Clerk of Courts office for the Carbon County Court of Common Pleas. The conviction followed a jury trial held in Carbon County. On October 30, 2000, Rutch was sentenced to imprisonment for a period of no less than 30 days nor more than 18 months, fined $300, and had his driving privileges suspended for a period of one year.

"(2) Rutch's arrest on August 17, 2002, for two counts of driving under the influence, misdemeanors of the second degree, and one count

An administration hearing to determine whether Rutch's prior record warranted non-renewal of his license was held before a hearing examiner designated by the board on December 21, 2005, pursuant to section 464 of

of reckless driving, a summary offense, arising out of an incident which occurred on August 17, 2002. At a bench trial held on January 13, 2004, Rutch was convicted of all offenses charged. On February 24, 2004, he was sentenced to imprisonment for a period of no less than 30 days nor more than 18 months, fined $500, and had his driving privileges suspended for a period of one year. The record of these proceedings is docketed to no. 009 CR 2003 in the Clerk of Courts office for the Carbon County Court of Common Pleas. Subsequently, on appeal to the Pennsylvania Superior Court, this conviction was vacated by order dated January 18, 2005. Allowance of appeal was denied by the Pennsylvania Supreme Court on August 30, 2005. The fact of Rutch's conviction and subsequent reversal on appeal was made part of the record at the hearing before the hearing examiner held on December 21, 2005.

"(3) Rutch's arrest on September 23, 2003, for two counts of persistent disorderly conduct, misdemeanors of the third degree, two counts of disorderly conduct, both summary offenses, and one count of public drunkenness, a summary offense, arising out of an incident which occurred on September 23, 2003. The record of these proceedings is docketed to no. 710 CR 2003 in the Clerk of Courts office for the Carbon County Court of Common Pleas. On December 2, 2005, Rutch entered a plea of nolo contendere to one count of disorderly conduct, graded as a misdemeanor of the third degree, all remaining charges being nolle prossed. The fact of Rutch's plea was made part of the record at the hearing before the hearing examiner held on December 21, 2005.

"(4) Three adjudicated violations of the Liquor Code bearing citation numbers 98-0783, 03-0762 and 04-0179.

"(a) With respect to citation no. 98-0783, Rutch was fined $500 for permitting his 8-year-old daughter behind the bar, tapping beer, in violation of section 493 (13) of the Liquor Code, 47 P.S. §4-493(13). This incident occurred on March 18, 1998.

"(b) With respect to citation no. 03-0762, Rutch was fined $100 for an incident which occurred on April 15, 2003, at which time Rutch was open for business without a valid health permit or license in vio-

the code, 47 P.S. §4-464. At this hearing, the board presented certified documentary evidence of Rutch's prior criminal record and history of adjudicated citations; no further evidence was presented on behalf of the board. Rutch testified on his own behalf.

By order dated October 18, 2006, the board denied Rutch's application. Rutch appealed the board's denial to this court on October 19, 2006, whereupon, by order dated October 20, 2006, we granted a supersedeas and stay pursuant to section 464 of the code, 47 P.S. §4-464, permitting Rutch to continue operating during the administrative process. On November 20, 2006, the board issued its opinion in which it concluded that "[a]s a result of the adjudicated citations and the misdemeanor convictions, [Rutch] is no longer a person of good repute as required by the code and, therefore, he has abused the privilege of holding a liquor license." (Board opinion, p. 15.)

Following several continuance requests by Rutch, a de novo hearing was held before this court on April 19, 2007. At this hearing, the board placed in evidence the record of the proceedings held before the hearing examiner and a copy of the board's opinion. No new evidence was presented by the board.

---

lation of section 437 of the Liquor Code, 47 P.S. §4-437, and section 5.41 of the board's regulations, 40 Pa.Code §5.41.

"(c) With respect to citation no. 04-0179, Rutch was fined $250 for an incident which occurred on January 13, 2004, in which alcoholic beverages were sold on credit in violation of section 493(2) of the Liquor Code, 47 P.S. §4-493(2), and sections 11.192 and 11.193 of the board's regulations, 40 Pa.Code §§11.192 and 11.193."

In support of his appeal, Rutch testified that his difficulties with alcohol are in the past, that he is well respected in the community, and that recently he was notified by the Nesquehoning Veterans of Foreign Wars Outpost that he has been chosen to receive its Business Loyalty Day Award. Rutch also presented three additional witnesses each of whom testified that since 2004 Rutch has addressed his drinking problems, and that he is a good person. These witnesses were Todd Leslie, a full-time officer with the Jim Thorpe Borough Police Department and a resident and former council member in Nesquehoning; Charles Parker Sr., a retired police officer who resides in Beaver Meadows, Carbon County, Pennsylvania, and who is a former constable in Carbon County; and Cynthia S. Ray, Esquire, a practicing attorney who represented Rutch in several of the matters on which the board based its decision not to renew his application.

## DISCUSSION

"When an appeal is taken from a board decision, under section 464 of the Liquor Code, the trial court hears the matter de novo and renders its own findings of fact and conclusions of law. *Two Sophias Inc. v. Pennsylvania Liquor Control Board,* 799 A.2d 917, 919 (Pa. Commw. 2002). The trial court must receive the record of the proceedings below, if offered, and may hear new evidence. *Id.* at 922. The trial court has the authority to sustain, alter, change, modify or amend a decision of the board, even if the court does not make findings of fact that are materially different from those found by the board. *Id.* at 922 n.5." *Goodfellas Inc. v. Pennsylvania*

*Liquor Control Board,* 921 A.2d 559, 565 (Pa. Commw. 2007), *appeal denied,* 594 Pa. 700, 934 A.2d 1279 (2007).

The trial court enjoys broad discretion in conducting its de novo review of the board's decision. See *id.* at 566. In exercising its judgment, the court has the authority "to sustain or overrule the board, without regard to whether the same or different findings of fact or conclusions of law are made." *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge Inc.,* 536 Pa. 254, 265, 639 A.2d 14, 19 (1994).

Section 404 of the Liquor Code provides, in pertinent part, that "[u]pon receipt of the application and proper fees, and upon being satisfied . . . that the applicant is a person of good repute, . . . the board shall . . . issue to the applicant a liquor license . . . ." 47 P.S. §4-404. Section 470 (a) of the code, 47 P.S. §4-470(a), provides that a license shall be renewed unless, among other things, "the applicant has by his own act become a person of ill repute." Additionally, section 470(a.1) of the code, 47 P.S. §4-470(a.1)(1) and (2), grants the board the authority to refuse to renew a liquor license if the licensee has violated any of the laws of this Commonwealth, any regulations of the board, or has one or more adjudicated citations with respect to the involved license.

Whether a person is one of "good repute" concerns primarily whether that person is appropriate to hold a liquor license, whether he will comply with the provisions of the Liquor Code and its regulations, and whether he will properly exercise the trust reposed in a licensee to assure that the public is protected in the sale

and service of alcoholic beverages. See *e.g., Street Road Bar & Grille Inc. v. Pennsylvania Liquor Control Board,* 583 Pa. 72, 92, 876 A.2d 346, 357 (2005) ("The 'repute' of which the code speaks can only be understood in terms of the purpose for which repute is to be considered, *i.e.,* to determine if issuance of a liquor license is appropriate."). The question is essentially one of the applicant's character—whether he is a person who is predisposed to act in certain ways—with the focus on those traits of character relevant to being in the liquor business. "[I]n light of the 'peculiar nature' of this particular type of business endeavor, a person 'who applies for, and receives permission from, the Commonwealth to carry on the liquor trade assumes the highest degree of responsibility to his fellow citizens.'" *Street Road,* 876 A.2d at 355 (quoting *Commonwealth v. Koczwara,* 397 Pa. 575, 581, 155 A.2d 825, 828 (1959)). Unlike in a criminal case, however, where character evidence predictive of a defendant's conduct is confined to reputation evidence, in a civil proceeding, such as this, "where character or a trait of character is admissible as an element of a claim or defense, character may be proved by specific instances of conduct." Pa.R.E. 405(b)(1). In these proceedings, Rutch's "citation history and prior misdemeanor convictions are relevant to the question of good repute." *Street Road,* 876 A.2d at 347-48; see also, Board Regulation section 1.5, 40 Pa.Code §1.5.[2]

---

2. This regulation provides as follows:

"Section 1.5 Reputation: Use of criminal and citation history.

"When considering whether a person is reputable or the repute of a person under any section of the code or this title, the board may consider whether that person has been convicted of any crimes including misdemeanors and felonies, the person's history regarding li-

The burden of establishing good repute is upon the applicant. See *Street Road,* 876 A.2d at 347. Rutch knows this and understands as well that his conduct in the past will not sustain this burden. Recognizing this, Rutch seeks to distance himself from his past. To do so, he argues that he is no longer the person he once was, that he has reformed himself, and that he is currently eligible and qualified to hold a license. Rutch asks us in effect to judge him not by what he has done, but by what he says he has become.

Both Leslie and Parker testified that Rutch no longer consumes alcohol to the degree he once did, that he offers assistance to and demonstrates respect for the police, and that he is, in general, a good person. All this may well be true, however, the fact that an applicant "has a localized reputation as a 'good guy' generally," is not the issue. *Id.* at 357. Moreover, when questioned specifically about the effect of Rutch's prior convictions on his reputation, Leslie stated there was none. See generally, *Commonwealth v. Becker,* 326 Pa. 105, 114, 191 A. 351, 356 (1937) (explaining that a character witness may be questioned on specific acts of prior misconduct to establish "either that the witness is not familiar with the reputation concerning which he has testified [*i.e.,* his basis of knowledge of the person or trait] or that his standard of what constitutes good repute is unsound"); see also, *Street Road,* 876 A.2d at 358-59 (quoting McCormick on Evidence, §191, at 676-77 n.27 (5th edition 1999) to the same effect).

---

censes issued by the board, including the citation history of the licensee, and any other factor the board deems appropriate."

Ray testified that Rutch is a close personal friend, that she represented him for the 1999 driving under the influence and 2003 disorderly conduct charges, that these incidents were a wake-up call for him, and that since 2004, Rutch has dramatically changed his drinking habits. According to Ray, Rutch is a new man, and today, when he sits at his bar for a drink, he has only water in his beer glass. Ray, who clearly was familiar with Rutch's criminal history, testified generally that he is highly respected as a law-abiding citizen in his community. In addition to the significance of her specific knowledge of Rutch's past misconduct as it bears on our assessment of her testimony regarding Rutch's reputation for being a law-abiding citizen, see *Becker, supra,* Ray was never asked directly what Rutch's reputation is for following the laws applicable to the operation of a licensed business or his reputation for sobriety in his personal life. Finally, as a practicing attorney in this Commonwealth, Ray has an ethical obligation not to testify adversely about a client with respect to matters on which she represented him. Pennsylvania Rules of Professional Conduct 1.9(c).

On his own behalf, although Rutch admitted his drinking in 2003 and 2004 was getting out of hand, he denied that he was intoxicated or had consumed alcohol with respect to the 2003 disorderly conduct incident. He asserted that he was a Good Samaritan who came to the rescue of the driver of his car who was being bullied and ridiculed by the police without basis. He submitted that the charges the police filed against him were manufactured to discredit him and to deter him from testifying in support of the driver in the event a civil rights claim was filed. This testimony was in stark contrast to the

affidavit of probable cause for this incident filed by the Nesquehoning Police, and made part of the record in these proceedings, in which the arresting officers reported that Rutch repeatedly yelled and verbally abused both officers, screaming obscenities at them, as they tested the driver for intoxication; that Rutch's conduct frustrated their investigation, inciting the driver to defy the police; and that all the time this was occurring Rutch himself appeared intoxicated: his speech was slurred, his eyes were red and glassy, his breath reeked of alcohol, and his clothes were in disarray.

Rutch also testified that he successfully completed out-patient drug and alcohol counseling on March 19, 2004, and is today a moderate drinker. He opined that he is highly respected for being a law-abiding citizen and is a firm backer of the police. In apparent contradiction, he also acknowledged in the administrative hearing before the hearing examiner that he has a reputation for being a troublemaker.

The board's evidence established that between March 18, 1998, and January 13, 2004, on three separate occasions, Rutch violated various provisions of the Liquor Code and Board Regulations, two within the most recent licensing period preceding the period in question here. Additionally, between September 12, 1999 and September 23, 2003, on three different occasions, Rutch was charged with misdemeanor offenses, all involving alcohol-related incidents and all resulting in convictions, albeit the conviction which is related to the August 17, 2002 incident was reversed on appeal.[3] The September

---

3. At the time of hearing, we were asked by Rutch to take judicial notice of the fact of this reversal. In doing so, we believe it is also ap-

23, 2003 offense also occurred within the most recent licensing period preceding that at issue here.

The foregoing evidences repeated violations over a recent six-year period of various laws governing the sale and consumption of alcohol, both in Rutch's business and in his personal life. Such conduct demonstrates a disregard of both the liquor laws and the criminal laws of this Commonwealth. To argue that Rutch's conduct does not affect his good repute for alcohol-related activities in a small community, or reflect adversely on his reputation as a responsible, law-abiding holder of a liquor license, strains the limits of credibility.

As between character proved by reputation and character proved by conduct, the latter may be a more accurate measure of a person's true character, particularly when involving multiple acts over an extended period. In contrast to reputation evidence, which, by its very nature, is indirect evidence of a person's character based upon a general summary opinion prevalent in the community,[4] character proven by specific instances of con-

propriate to note that the basis for reversal, as found by the Superior Court, was the legality of the stop and consequent suppression of evidence. Though an arrest itself cannot be used to test a character witness' knowledge of a defendant's reputation in a criminal matter, this bar does not preclude consideration of an arrest as it affects a person's character or reputation for sobriety in a civil proceeding where there has been no expungement of the criminal record. See *Street Road Bar & Grille Inc. v. Pennsylvania Liquor Control Board,* 583 Pa. 72, 93-94, 876 A.2d 346, 358-59 (2005); see also, *V.J.R. Bar Corporation v. Pennsylvania Liquor Control Board,* 480 Pa. 322, 390 A.2d 163 (1978) (holding that civil sanctions may be imposed against license holders even when criminal charges have not resulted in a conviction).

4. "The word 'character' is frequently used interchangeably with the word 'reputation'. In a legal sense it means 'reputation' as distin-

duct is direct evidence of how a person actually behaved when confronted with circumstances relevant to those at issue. As stated by our Supreme Court, "[a]rguably, the single most important factor in assessing fitness for the privilege of licensure is the applicant's Liquor Code performance and compliance in the past." *Street Road,* 876 A.2d at 358. "Like prior Liquor Code violations, misdemeanor convictions speak to the applicant's law-abiding character." *Id.* at 359.

When weighing the evidence presented by Rutch as to his good repute against the specific instances of Rutch's criminal convictions and arrests for alcohol-related matters in his personal life, and violations of the Liquor Code in operating his business, we are not convinced that Rutch has carried his burden of establishing "good repute." Three of these violations occurred within the immediately preceding license period to that at issue. Rutch's criminal convictions and arrest record reveal continuing alcohol abuse over a period of at least four years, extending to a time within one year of the renewal period in issue.

The responsibility which accompanies the privilege of holding a liquor license requires that the burden of

guished from 'disposition'. Character grows out of particular acts, but is not proved by them, inasmuch as a person may under the stress of special circumstances do a thing which is contrary to his ordinary disposition and practice. The method of proving character is by showing the general reputation of the person in the neighborhood in which he lives. What is proven, therefore, is not a person's real character, but his character as reputed among his neighbors, or what the consensus of opinion of the neighbors is as to his character." *Commonwealth v. Webb,* 252 Pa. 187, 196, 97 A. 189, 196 (1916), quoted with approval in *Street Road,* 876 A.2d at 357.

establishing "good repute" is on the applicant. "As remedial civil legislation, the code is to be liberally construed to effectuate its purpose to protect the public health, welfare, peace and morals." *Hyland Enterprises Inc. v. Pennsylvania Liquor Control Board,* 158 Pa. Commw. 283, 288-89, 631 A.2d 789, 792 (1993). Rutch's history of convictions and arrests for alcohol-related matters during a four-year period inevitably puts in question the appropriateness of his serving alcoholic beverages to the general public. His record of violating the Liquor Code on three separate occasions—once within this same four-year period and once more recently—when even a single violation of the Liquor Code can be a sufficient basis to decline to renew a license, *id.* at 791, weighs even further against non-renewal.

## CONCLUSION

Under the circumstances, Rutch's appeal will be denied.