974 A.2d 1144

## MALT BEVERAGES DISTRIBUTORS ASSOCIATION

v.

## PENNSYLVANIA LIQUOR CONTROL BOARD, Ohio Springs, Inc., Intervenor.

## Appeal of Pennsylvania Liquor Control Board.

## Malt Beverages Distributors Association

v.

## Pennsylvania Liquor Control Board, Ohio Springs, Inc., Intervenor.

## Appeal of Ohio Springs, Inc., Intervenor.

Supreme Court of Pennsylvania.

Argued May 14, 2008.

Decided June 15, 2009.

450

Faith Smith Diehl, Esq., Rodrigo Jose Diaz, Esq., PA Liquor Control Board, Harrisburg, Pennsylvania Liquor Control Board (84 MAP 2007).

Robert B. Hoffman, Esq., WolfBlock LLP, for Malt Beverages Distributors Association (84 MAP 2007, 85 MAP 2007).

Mark F. Flaherty, Esq., Mark E. Kozar, Esq., Stanley Wolowski, Esq., Thomas Benton Henry, Esq., Flaherty & O'Hara, P.C., Pittsburg, for Ohio Springs, Inc. (84 MAP 2007).

Mark F. Flaherty, Esq., Mark E. Kozar, Esq., Stanley Wolowski, Esq., Thomas Benton Henry, Esq., Flaherty & O'Hara, P.C., Pittsburg, for Ohio Springs, Inc. (85 MAP 2007).

Faith Smith Diehl, Esq., PA Liquor Control Board, Rodrigo Jose Diaz, Esq., Harrisburg, for Pennsylvania Liquor Control Board (85 MAP 2007).

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION

Justice BAER.

This appeal presents the issue of whether an establishment that sells malt or brewed beverages ("beer")[1] solely for take-out and prohibits consumption of beer on its premises qualifies as a "retail dispenser," as defined by Section 102 of the Liquor Code ("Code"), 47 P.S. § 1–102.[2] We hold that such an establishment does not qualify as a retail dispenser and, accordingly, affirm the order of the Commonwealth Court.

In January of 2004, Ohio Springs, Inc., (Ohio Springs), filed an application with the Pennsylvania Liquor Control Board (PLCB) for the transfer of both the ownership and location of an "eating place malt beverage license" from a bar and grill located in Altoona, Blair County, to a different locale in Altoona, where Ohio Springs operated a Sheetz gas station/convenience store/fast food restaurant (for convenience, the fast-food portion of the Sheetz facility will be referred to as "restaurant").[3] Ohio Springs proposed to sell beer from

1. The definition of "malt or brewed beverages" set forth at 47 P.S. § 1–102 includes beer, ale, or similarly fermented malt beverages containing one-half of one per centum or more of alcohol by volume. For purposes of simplicity, we employ the term "beer" herein to refer to "malt or brewed beverages."

2. Section 102 of the Code defines "retail dispenser" as:

 ... any person licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises of such licensee, with the privilege of selling malt or brewed beverages in quantities not in excess of one hundred ninety-two fluid ounces in a single sale to one person, to be carried from the premises by the purchaser thereof. 47 P.S. § 1–102.

3. Under Section 432(a) of the Code, the PLCB is authorized to issue a retail dispenser's license to, *inter alia*, an "eating place" that "meet[s] all the requirements of [the Code] and the regulations of the [PLCB]." 47 P.S. § 4–432(a). Section 102 of the Code defines "eating place" as:

 a premise where food is regularly and customarily prepared and sold, having a total area of not less than three hundred square feet available to the public in one or more rooms, other than living quarters, and equipped with tables and chairs, including bar seats, accommodating thirty persons at one time.

coolers placed in the restaurant area of the facility, and planned to prohibit consumption of the beer on the premises. The Malt Beverages Distributors Association of Pennsylvania (MBDA), a trade association for Pennsylvania beer distributors, filed a petition to intervene, in which it objected to the license transfer on the ground that Ohio Springs failed to satisfy the definition of retail dispenser under Section 102 of the Code because it intended to limit its beer sales to carry-out purchases with no on-premises consumption. The PLCB denied MBDA's petition to intervene and, thus, did not address its objection to the transfer application.

Following a hearing on June 30, 2004, the PLCB approved Ohio Springs' application to transfer the license, subject to conditions requiring it to separate the convenience store from the restaurant by a permanent partition, and separate the gas pump area from the restaurant.[4] MBDA filed a petition for review of the PLCB's decision in the Commonwealth Court, in which it challenged the denial of intervenor status and the approval of the license transfer. MBDA also requested that the Commonwealth Court remand the matter to the PLCB for it to consider, for the first time, MBDA's objection to the transfer application on the ground that Ohio Springs failed to qualify as a retail dispenser.

On August 18, 2005, the Commonwealth Court granted MBDA's requested relief. *Malt Beverages Distributors Ass'n.*

47 P.S. § 1–102. As the "retail dispenser" license at issue is sought to be used at an "eating place," the terms "eating place malt beverage license" and "retail dispenser license" are used synonymously herein. Retail liquor licenses may also be issued to a hotel, restaurant, or club, although such establishments are not at issue here. 47 P.S. § 4–401.

4. Ohio Springs appealed the imposition of these conditions to the common pleas court, but later withdrew its appeal. On August 19, 2005, Ohio Springs entered into a conditional licensing agreement with the PLCB, in which it essentially agreed to abide by the PLCB's restrictions. We note that the propriety of the conditions imposed is not at issue in this appeal. Moreover, the physical characteristics describing the exact location of the restaurant *vis-à-vis* the convenience store and the gas station are not relevant; rather, the dispositive facts in resolving the issue before us are that Ohio Springs prohibits on-site consumption of beer and intends to sell beer solely for carry-out purposes.

*v. Pennsylvania Liquor Control Bd.*, 881 A.2d 37 (Pa.Cmwlth. 2005). The court ruled that MBDA had standing to intervene and remanded the matter to the PLCB to determine whether Ohio Springs satisfied the statutory definition of retail dispenser. Ohio Springs subsequently filed a petition for allowance of appeal with our Court, challenging the Commonwealth Court's ruling on MBDA's intervenor status. Ultimately, we denied allocatur on this issue. *Malt Beverages Distributors Ass'n. v. Pennsylvania Liquor Control Bd.*, 586 Pa. 775, 895 A.2d 1264 (2006). Thus, the matter then returned to the PLCB for a hearing on the merits of MBDA's challenge to the license transfer.

Upon remand, on May 3, 2006, the PLCB ruled that Ohio Springs fell within the statutory definition of retail dispenser.[5] It held that while Section 102 permits a retail dispenser to sell beer for on-site consumption, it contains no express language requiring it do so. The PLCB found that imposing such an obligation would require a licensee to avail himself of all privileges granted by a particular license. It reasoned that such construction would lead to the absurd result of citing a licensee for *not* offering alcohol to be ingested at the site, when the express purpose of the regulatory scheme is to restrict the sale of alcohol. *See Application of El Rancho Grande Inc.*, 496 Pa. 496, 437 A.2d 1150, 1155 (1981) (providing that the purpose of legislation regulating the sale of alcohol has always been to restrain the sale, not promote it). Finally, the PLCB noted that there was no impediment to the approval of Ohio Springs' application because, in various "court filings," [6] it indicated that it would sell beer for on-

5. By orders dated May 3, 2006, the PLCB denied two motions filed by MBDA: (1) a motion to vacate the conditional licensing agreement of August 19, 2005; and, (2) a motion for specified attorneys to recuse themselves from advising the PLCB if they have prejudged the remanded issue.

6. Ohio Springs first made such assertion in its September 30, 2005 "Response to [MBDA's] Motion to Vacate [an Automatic Stay]," filed in Commonwealth Court, in which Ohio Springs asserted that it "will sell malt and brewed beverages for on premises consumption if required by the PLCB in order to receive operating authority or if required by

premises consumption if it was required to do so to obtain the license.[7] Accordingly, the PLCB reaffirmed its order approving Ohio Springs' license transfer application.

On February 23, 2007, in a majority opinion authored by the Honorable Robert Simpson, a divided *en banc* Commonwealth Court reversed, holding that the PLCB erred in granting the application because Ohio Springs failed to satisfy the statutory definition of retail dispenser. *Malt Beverages Distributors Ass'n. v. Pennsylvania Liquor Control Bd.,* 918 A.2d 171 (Pa.Cmwlth.2007). The court held that the PLCB's interpretation of Section 102 was inconsistent with the plain language of the statute, which provided that the primary purpose of a retail dispenser is to engage in the sale of beer for on-premises consumption, and that providing beer for takeout sales was only secondary. It concluded that, by allowing a retail dispenser to sell either for on-site consumption or takeout, the PLCB erroneously inserted "either/or" language into the statute when none existed. Further, the court found that the PLCB's interpretation lacked common sense and queried why the PLCB would license an entity "to engage in the retail sale of malt or brewed beverages for consumption on the premises" when that entity expressly prohibited the sale of beverages for that purpose.[8]

The Commonwealth Court viewed the PLCB's interpretation of Section 102 as significantly transforming the character of outlets for retail beer sales by essentially permitting beer sales in grocery stores, convenience stores, and other commercial establishments, so long as such facilities had a small area for dining and thereby satisfied the statutory definition of "eating place." The court concluded that if such transformation of the character of retail sales was warranted, it should be

[Commonwealth Court] as a condition for the continuance of the automatic supersedeas." *Id.* at Paragraph 27.

7. While the PLCB made such determination, as noted in footnote 11, *infra,* the propriety of a license under circumstances where Sheetz sells beer for consumption on its premises is not before us.

8. Because the court engaged in a plain language analysis, it found it unnecessary to discuss the PLCB's various statutory construction arguments.

initiated by the legislature. Finally, the Commonwealth Court rejected the PLCB's finding that enumerated "court filings" could be utilized to establish that Ohio Springs would be amenable to selling beer on the premises if required to do so to obtain the license. The court held that there were no "filings" or any other documentation in the record before the PLCB indicating that Ohio Springs would permit on-premises consumption of beer.

Judge Cohn Jubelirer, joined by Judges Leadbetter and Leavitt, dissented. The dissent mirrored the position taken by the PLCB—that Section 102 merely permits the sale of beer for on-site consumption, but does not require it. It interpreted Section 102 as providing that one who has permission to sell beer for on-site consumption (by license) may (by privilege) sell beer in limited quantities to persons for off-site consumption. The dissent further opined that the majority erred by reading the definition in Section 102 in isolation, without examining it in context with other provisions of the Code, including Section 442(a), which addresses the means by which retail dispensers can receive and dispense beer, and states that retail dispensers may "break the bulk upon the licensed premises and sell or dispense the same for consumption on or off the premises so licensed." 47 P.S. § 4–442(a)(1).[9] As a final point, the dissent reiterated the view that the majority's reading of Section 102 mandated a licensee to use its license to the fullest extent, a proposition never adopted by any court or statute.

9. Section 442(a)(1) states, in full, as follows:

 No retail dispenser shall purchase or receive any malt or brewed beverages except in original containers as prepared for the market by the manufacturer at the place of manufacture. The retail dispenser may thereafter break the bulk upon the licensed premises and sell or dispense the same for consumption on or off the premises so licensed: Provided, however, That no retail dispenser may sell malt or brewed beverages for consumption off the premises in quantities in excess of one hundred ninety-two fluid ounces: Provided, further, That no club licensee may sell any malt or brewed beverages for consumption off the premises where sold or to persons not members of the club. 47 P.S. § 4-442(a)(1).

■ This Court granted the petitions for allowance of appeal filed by the PLCB and Ohio Springs to determine whether the Commonwealth Court erred in holding that Ohio Springs failed to satisfy the statutory definition of retail dispenser.[10]

■■ In resolving this issue, we are guided by the settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). As a general rule, the best indication of legislative intent is the plain language of a statute. *Shiffler*, 879 A.2d at 189 (citations omitted). In reading the plain language, "words and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. § 1903(a). It is only when "the words of the statute are not explicit" on the point at issue that resort to statutory construction is appropriate. 1 Pa.C.S. § 1921(c); *Street Road Bar & Grille, Inc., v. Pennsylvania Liquor Control Board*, 583 Pa. 72, 876 A.2d 346, 352 (2005). Finally, in ascertaining legislative intent, the Statutory Construction Act "requires a presumption that the General Assembly did not intend a result that is absurd or unreasonable." 1 Pa.C.S. § 1922(1); *Street Road Bar & Grille, Inc.*, 876 A.2d at 353.

As noted, the relevant statutory provision at issue, Section 102, defines "retail dispenser" as follows:

"Retail dispenser" shall mean any person licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises of such licensee, with the privilege of selling malt or brewed beverages in quantities not in excess

10. Because this claim raises an issue of statutory construction, this Court's standard of review is plenary. *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 189 (2005).

of one hundred ninety-two fluid ounces in a single sale to one person, to be carried from the premises by the purchaser thereof.

47 P.S. § 1–102.

Ohio Springs argues that the Commonwealth Court erroneously held that Section 102 requires a retail dispenser to sell beer for on-site consumption, and thereby converted the privilege of selling beer in such manner into a duty. It asserts that the clear implication of the decision is that a liquor licensee must now fully exercise all privileges granted by a liquor license or risk citation for failing to do so. To illustrate its point, Ohio Springs maintains that, under the Commonwealth Court's holding, licensees who are permitted to sell several types of alcohol during enumerated times would be obligated to do so and would be prohibited from operating less hours or selling a limited type of alcohol. It maintains that this notion is clearly antithetical to the core principles of the Liquor Code, which are to restrain the sale of alcohol, *see Application of El Rancho Grande Inc.*, 437 A.2d at 1155 (providing that the purpose of legislation regulating the sale of alcohol has always been to restrain the sale, not promote it), and protect the public welfare, health, peace, and morals of our citizens. *See* 47 P.S. § 1–104(a) (providing that Liquor Code must be construed liberally for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon.).

Ohio Springs further contends that the Commonwealth Court's interpretation overlooks the purpose of Section 102, which is to designate the type of alcohol that a retail dispenser may sell, *i.e.*, "malt or brewed beverages [beer]." Like the dissenting opinion below, it submits that the Commonwealth Court failed to read this definitional section *in para materia* with Section 442(a)(1) of the Code, which provides restrictions on a retail dispenser's purchase and sale of beer and states that "[t]he retail dispenser may ... sell or dispense [beer] *for consumption on or off the premises so licensed. ...*" 47

Pa.C.S. § 4–442(a)(1) (emphasis added).[11]

The PLCB, also an appellant herein, reiterates the arguments made by Ohio Springs and presents additional contentions. It asserts that the Commonwealth Court erred by failing to defer to the PLCB's interpretation because it was not clearly erroneous, as evidenced by the strong dissent below. The PLCB also argues that the Commonwealth Court's holding was implicitly rejected by our Court in *Pittaulis Liquor License Case,* 444 Pa. 243, 282 A.2d 388 (1971), where our Court held that an application to transfer a restaurant liquor license cannot be refused by the PLCB on grounds not embraced in the Code; the particular ground in *Pittaulis* being that the proposed premises was subject to a lease restriction that prohibited the sale of alcohol. Further, essentially acknowledging that the precise issue presented herein is one of first impression for this Court, the PLCB contends that appellate court decisions involving retail dispenser liquor licenses have never required the sale of beer for on-site consumption. *See Myers v. Pennsylvania Liquor Control Board,* 499 Pa. 76, 451 A.2d 1000 (1982); *Pennsylvania Liquor Control Board v. Court House Motor Inn, Inc.,* 13 Pa.Cmwlth.

11. Alternatively, Ohio Springs argues that, if we adopt the Commonwealth Court's construction of retail dispenser as requiring the sale of beer for on-site consumption, we should, nevertheless, reinstate the order of the PLCB, which approved its application for license transfer. Ohio Springs maintains that, contrary to the evidence it presented at the hearing before the PLCB on June 30, 2004, it represented in subsequent court filings, the first of which was filed in Commonwealth Court on September 30, 2005, see n. 7, *supra,* that it would permit on-site consumption of beer if the court ruled that the same was required. As did the Commonwealth Court, we summarily reject this claim as it is undisputed that the record before the PLCB at the hearing in 2004 indicated that Ohio Springs prohibited the consumption of beer on its premises. Moreover, we express no opinion as to the propriety of license issuance if the Sheetz facility sold beer on the premises, as such issue is not before us.

Further, MBDA requests that if we reverse the ruling of the Commonwealth Court, we should remand to that court for it to consider its outstanding motions seeking the recusal of specified counsel for the PLCB and the nullification of the conditional licensing agreement entered into by Ohio Springs and the PLCB. We need not consider such request as we are affirming the order of the Commonwealth Court.

164, 318 A.2d 383 (1974); *Application of Dorothy R. Hohl*, 20 Pa.Cmwlth. 490, 342 A.2d 493 (1975).

MBDA responds that the Commonwealth Court properly construed the plain language of Section 102 to mean that a retail dispenser's sale of beer for takeout is a "privilege" that arises from the exercise of the right to sell beer to be consumed on the premises of the facility. It relies on the unique language employed in Section 102, defining retail dispenser as any person "licensed" to engage in the retail sale of beer for consumption on the premises, with the "privilege" of selling a limited amount of beer for takeout. MBDA argues that this language is strikingly different from "either/or" language and establishes that "consumption on the premises" is the principal manner of beer sales for such licensees. As such, it maintains that the sale of beer for consumption on the premises serves as a prerequisite to selling beer for takeout purposes.[12] Because the record here demonstrates that Ohio Springs prohibits patrons from drinking beer at the Sheetz facility, MBDA concludes that Ohio Springs is ineligible for a retail dispenser license.

MBDA explains that, contrary to its opponents' assertions, the Commonwealth Court's construction of Section 102 in no way obligates a retail dispenser, or any other licensee, to exercise its license to the fullest extent. It maintains that the Commonwealth Court's holding merely recognizes that a retail dispenser's privilege to sell beer for takeout is contingent on its sale of beer for on-site consumption. According to MBDA, this plain language of Section 102 tracks the structure of the Code-established beer distribution system and embraces the

---

**12.** MBDA further asserts that this construction does not conflict with Section 442, entitled, "Retail dispensers' restrictions on purchases and sales." It acknowledges that Section 442 provides that retail dispensers may break the bulk of beer received in the original containers as prepared by the manufacturer and "sell or dispense the same for consumption on or off the premises so licensed." 47 P.S. § 4–442(a)(1). MBDA asserts that, unlike Section 102, however, Section 442 does not define the obligations of retail dispensers, but rather assumes that the entity already satisfied the statutory definition and merely provides that such licensees must receive beer in the original containers as prepared by the manufacturer, and may break the bulk for distribution.

statutory limitation on which entities can sell beer. It argues that granting the license transfer application would effectively convert the Sheetz facility into a beer distributor, without requiring it to sell the beer by the case.[13] Echoing the Commonwealth Court's concerns, MBDA submits that such holding would significantly transform the character of beer sale outlets to include grocery stores, convenience stores, and other commercial establishments with small areas for dining, that would qualify as eating places under the Code. It maintains that a policy decision in this regard can only be accomplished through legislative mandate, and not by administrative or judicial decision.

MBDA further disputes the additional contentions raised by the PLCB. It argues that the PLCB's interpretation of the Code is only entitled to deference when the statute is ambiguous and when the agency construction has arisen in the ordinary course, rather than having made its first appearance in litigation. It submits that neither condition applies here as the language of Section 102 is clear and the PLCB never identified any decision or internal memorandum reflecting that it had considered and decided the question at issue prior to this litigation. It further argues that the PLCB's reliance on the Commonwealth Court's decision in *Pittaulis* is misplaced because it is undisputed that the basis for denial of Ohio Springs' application is expressly included in the Code at Section 102. Emphasizing the PLCB's concession that there is no appellate decision that expressly addresses the issue at

13. The Liquor Code defines "distributor" as follows:

"Distributor" shall mean any person licensed by the board to engage in the purchase only from Pennsylvania manufacturers and from importing distributors and the resale of malt or brewed beverages, except to importing distributors and distributors, in the original sealed containers as prepared for the market by the manufacturer at the place of manufacture, but not for consumption on the premises where sold, and in quantities not less than a case or original containers containing one hundred twenty-eight ounces or more which may · be sold separately.

47 P.S. § 1–102. Thus, a distributor may not, in a single transaction, sell less than a case of beer or original containers containing 128 ounces or more, while a retail dispenser may sell no more than 192 ounces (twelve 16–ounce bottles, commonly packaged as two six-packs, or sixteen 12–ounce bottles).

hand, *see* PLCB Brief at 21, MBDA contends the remaining cases upon which the PLCB relies are inapplicable here.[14]

Initially, we agree with MBDA that this case presents an issue of first impression and that none of the cases relied upon by the PLCB are controlling. In determining whether Ohio Springs is entitled to an eating place malt beverage license when it prohibits on-site consumption of beer, we examine the relevant language of the Code. As noted, under Section 432(a) of the Code, the PLCB is authorized to issue a retail dispenser's license to, *inter alia,* an eating place that "meet[s] all the requirements of [the Code] and the regulations of the [PLCB]." 47 P.S. § 4–432(a). The disputed requirement at issue provides that retail dispenser means one "licensed to engage in the retail sale of [beer] for consumption on the premises of such licensee, with the privilege of selling [beer in limited quantities] . . . to be carried from the premises . . ." 47 P.S. § 1–102.

The crux of the dispute focuses on whether the two types of beer sales contemplated in Section 102—the sale of beer for on-site consumption and the sale of beer for carry-out purchases—are independent alternatives or whether the sale of beer for takeout is contingent upon the sale of beer for consumption on the premises of the facility. Initially, we recognize that there is no mandatory language in Section 102, expressly requiring the sale of beer for on-site consumption as a prerequisite to the sale of beer for takeout. Thus, as advocated by Ohio Springs and the PLCB, the language could be construed as holding that one who is "licensed" to sell beer for on-site consumption, but does not exercise such right, retains the "privilege" of selling beer solely for carry-out purposes.

Nevertheless, there is force to the Commonwealth Court's holding that it defies common sense to license an entity to sell

14. MBDA attempts to interject other concerns into this appeal regarding the proximity of gasoline operations, the interior connections between the various components of the Sheetz facility, and the applicability of certain PLCB regulations to such circumstances. We find these issues to be outside the scope of our grant of allocatur and decline to address them.

beer for consumption on the premises when that entity expressly prohibits the sale of beer for that purpose. As advocated by MBDA, the Legislature did not employ "either/or" language indicating that the two types of beer sales were equal alternatives. Further, the sentence structure of Section 102 supports the view that the Legislature intended to make the sale of beer for takeout contingent upon the licensee engaging in the sale of beer for on-site consumption. Specifically, the placement of the phrase "with the privilege [of selling beer for carry-out]" after the Legislature defines a retail dispenser as "any person licensed to engage in the retail sale of [beer] for consumption on the premises," tends to indicate that the primary purpose of a retail dispenser is to sell beer to be ingested at the facility, with the privilege of selling beer for takeout being secondary to such purpose.

Faced with this predicament, we find that each party's interpretation of the statutory language is plausible and, therefore, the statute is ambiguous. As in all cases where a latent ambiguity in the statute exists, we resort to the canons of statutory construction to discover the Legislature's intent.[15] In determining legislative intent, we must read all sections of a statute "together and in conjunction with each other," construing them "with reference to the entire statute." *Housing Auth. of the County of Chester v. Pa. State Civil Serv. Comm.*, 556 Pa. 621, 730 A.2d 935, 945 (1999). Further, we keep in mind that the purpose of the Code is to restrain the sale of alcohol and to protect the public welfare, health, peace, and morals of the citizens of Pennsylvania. *See Appli-*

---

15. When statutory language is not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
 (1) The occasion and necessity for the statute.
 (2) The circumstances under which it was enacted.
 (3) The mischief to be remedied.
 (4) The object to be attained.
 (5) The former law, if any, including other statutes upon the same or similar subjects.
 (6) The consequences of a particular interpretation.
 (7) The contemporaneous legislative history.
 (8) Legislative and administrative interpretations of such statute.
 1 Pa.C.S. § 1921(c).

*cation of El Rancho Grande Inc., supra,* and 47 P.S. § 1–104(a).

When viewed in this context, the statutory interpretation of retail dispenser offered by MBDA, which construes a retail dispenser's sale of beer for takeout as a prerequisite to the sale of beer for on-premises consumption, prevails. The Code, when examined as a whole, reveals a legislative scheme whereby the privileges of retail dispensers are "dovetailed" with those of distributors, thereby allowing each type of licensee to occupy its own "niche" in the beer market.[16] Construing the definition of retail dispenser so as to permit the sale of beer solely for takeout purposes disrupts this statutory beer distribution scheme.

To elucidate, the parties agree that there is a three-tiered beer distribution system encompassing: (1) manufacturers; (2) distributors/importing distributors; and (3) retail dispenser licenses.[17] Unlike retail dispensers, distributors are prohibited from selling beer for consumption on the premises, *id.* at § 4–441(b), and can only sell beer by the case or keg. *Id.* Interpreting Section 102 as permitting retail dispensers to sell beer solely for takeout, without such purchases being incident to the general sale of beer for consumption on the premises, affords the retail dispenser the benefits of a distributor license, without imposing the accompanying restrictions, *i.e.,* it can act as a distributor by solely offering beer for carry-out purchase, yet not be burdened with the restriction of selling beer only by the case. Such interpretation infringes upon the market niche legislatively carved for the distributor, albeit to the extent that each individual takeout beer transaction conducted by a retail dispenser is limited to the equivalent of two six-packs. As recognized by the Commonwealth Court, such holding would expand the character of retail dispenser beer

16. Consideration of Section 442(a)(1) of the Code, relied upon by Ohio Springs and the PLCB, does not alter our analysis, as such provision merely informs an entity, which has presumably already satisfied the definition of retail dispenser, of the permissible means of receiving and dispensing beer. *See* n. 8 and n. 11 *supra.*

17. As noted, retail liquor licenses can be issued to *inter alia,* eating places, hotels, restaurants, and clubs. *See* 47 P.S. § 4–401.

sale outlets to encompass commercial entities, unlike hotels, restaurants, clubs, and eating places, which do not currently engage in the sale of alcohol.[18] While a policy determination in this regard may well be accomplished by our legislature, it is not our role to sanction such a momentous transformation. *See Uniontown Newspapers, Inc. v. Roberts*, 576 Pa. 231, 839 A.2d 185, 194 (2003) (providing that policy considerations do not lie with the courts, but are reserved for the legislative body to resolve).

The PLCB's attempt to depart from the statutory framework by issuing a license to a facility that has no intention of using the license in the manner for which it was intended cannot be countenanced and, in fact, demonstrates to us the strained view of the relevant legislation taken by the PLCB. We are confident that if the Legislature had intended to permit retail dispensers, who do not serve alcohol at their facilities, to sell six-packs to the general public, it surely would have utilized clear language authorizing such sales in a distinct provision of the Code. To the contrary, as noted *supra*, the language and sentence structure employed in Section 102's definition of retail dispenser leads one to conclude that the principal definition of a retail dispenser is an entity licensed to serve beer on the premises, with the secondary permissible function being the sale of a limited quantity of beer for takeout. While the General Assembly could have more carefully drafted the statutory provision at issue in order to close the current loophole utilized by the PLCB to justify the issuance of a license to Ohio Springs, we refuse to adopt the PLCB's hyper-technical interpretation given the wide-ranging ramifications of doing so. As noted earlier, under such an interpretation, far more commercial facilities, which were never clearly contemplated by the Legislature to sell beer through any provision of the Code, could be licensed to sell six-packs. Again, such a sea change in the sale of alcoholic

18. We acknowledge that the quantity of commercial establishments eligible to obtain a retail dispenser license is not boundless as the number of licenses issued is statutorily restricted. *See* 47 P.S. § 4–461 (Limiting number of retail licenses to be issued in each county).

beverages in this Commonwealth must be sanctioned by the Legislature.

 We also decline to afford administrative deference to the PLCB's interpretation of the Code for two reasons. First, as pronounced herein, the PLCB's construction of "retail dispenser" is contrary to the clear legislative scheme regarding beer distribution. *See Seeton v. Pennsylvania Game Commission,* 594 Pa. 563, 937 A.2d 1028, 1037 (2007) (recognizing that while courts traditionally accord the interpretation of the agency charged with administration of the act some deference, the meaning of a statute is essentially a question of law for the court). Secondly, as MBDA cogently notes, there is nothing in the record indicating that the PLCB had considered and decided this issue at a point prior to the instant litigation. *See id.,* (cautioning against the dangers of deferring to an agency's interpretation when such position was developed in anticipation of litigation); *see also Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 213, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (providing that "[d]eference to what appears to be nothing more than an agency's convenient litigation position would be entirely inappropriate.").

Contrary to the arguments of Ohio Springs and the PLCB, our holding in no way requires licensees across the Commonwealth to avail themselves of all privileges granted by their particular liquor license or risk citation for failing to do so. This case does not involve an attempt by the PLCB to sanction a retail dispenser licensee for failing to sell beer for on-site consumption; but rather involves a determination of whether Ohio Springs is entitled to an eating place malt beverage retail dispenser license based upon the proposed use of their facility. Under the circumstances presented, we find that it is not.

 In summary, we hold that an establishment that sells beer solely for takeout and prohibits consumption of beer on the premises of the facility does not qualify as a "retail dispenser," as defined by Section 102 of the Code.

Applying our holding to the instant case, we conclude that Ohio Springs' policy decision to function solely as a takeout provider of beer renders it ineligible for a retail dispenser license under Section 102. Thus, the order of the Commonwealth Court is affirmed.[19]

Chief Justice CASTILLE and Justice SAYLOR and McCAFFERY join the opinion.

Justice TODD files a concurring opinion.

Justice EAKIN files a dissenting opinion.

Justice TODD, concurring.

I agree with the Majority's conclusion that an establishment which sells malt or brewed beverages for takeout, but prohibits the consumption of such beverages on its premises, does not qualify as a "retail dispenser" under Section 102 of the Liquor Code, 47 P.S. § 1–102 (the "Code"). I write separately because I disagree with one aspect of the Majority's analysis concerning administrative deference to the interpretation of the Code by the Pennsylvania Liquor Control Board ("PLCB").

It is well established that the courts of this Commonwealth, in interpreting statutory language, afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation. *See Winslow–Quattlebaum v. Maryland Ins. Group*, 561 Pa. 629, 636, 752 A.2d 878, 881 (2000). The Majority declines to afford administrative deference to the PLCB's interpretation of the Code for two reasons.

**19.** Additionally, there are two outstanding motions in this matter: (1) MBDA's June 10, 2008 motion for leave to bring to the Court's attention the relevance of our decision in *Borough of Youngwood v. Pennsylvania Prevailing Wage Appeals Board*, 596 Pa. 603, 947 A.2d 724 (2008), which was decided after the parties' briefs were submitted and oral argument was conducted; and (2) Ohio Springs' June 26, 2008 motion to strike and/or disregard MBDA's June 10th motion. While we do not find our decision in *Borough of Youngwood* to be applicable here, we grant MBDA's motion for leave to bring such case to our attention, and dismiss as moot Ohio Springs' motion to strike.

First, citing *Seeton v. Pennsylvania Game Comm'n*, 594 Pa. 563, 581, 937 A.2d 1028, 1039 (2007) (holding Commonwealth Court erred in deferring to Pennsylvania Game Commission's interpretation of Pennsylvania Game and Wildlife Code because "those interpretations are patently at odds with the enabling Game and Wildlife Code"), the Majority concludes the PLCB's construction of "retail dispenser" is contrary to the clear legislative scheme regarding beer distribution, and, therefore, is not entitled to deference. I agree with the Majority's determination in this regard.

As an additional basis for declining to give deference to the PLCB's interpretation of the Code, the Majority, again citing, *inter alia, Seeton,* notes that this Court has warned "against the dangers of deferring to an agency's interpretation when such position was developed in anticipation of litigation," Majority Op. at 466, 974 A.2d at 1154, and notes that, at least according to the Malt Beverages Distributors Association, there is no evidence in the record to suggest that the PLCB had considered the instant issue prior to the instant litigation. However, while this Court has cited, in *dicta,* the potential problems with deferring to administrative interpretations made in the context of litigation, we have yet to thoroughly consider, let alone adopt, such an exception to our general rule of administrative deference. *See Seeton,* 594 Pa. at 578 n. 12, 937 A.2d at 1037 n. 12. Thus, I distance myself from the Majority's reliance on this undeveloped exception. Moreover, I find no indication that the subject licensing decision was, in fact, made in the context of litigation. Rather, it appears to have resulted from a routine administrative review process.

In sum, the fact that the PLCB's interpretation of the meaning of "retail dispenser" is contrary to the clear legislative scheme for beer distribution is a sufficient basis for declining to give deference to the PLCB's interpretation. Accordingly, I believe it is unnecessary to consider whether the PLCB's interpretation was developed in the context of litigation, and, to the extent the Majority does so, I do not join that portion of the Majority's opinion.

Justice EAKIN, dissenting.

I respectfully dissent from the majority's conclusion that an establishment selling beer for take-out while not selling for consumption on the premises does not qualify as a "retail dispenser" under the Liquor Code. Majority Op., at 465, 974 A.2d at 1154. The plain language of 47 P.S. § 1–102 defines "retail dispenser" as:

[A]ny person licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises of such licensee, with the privilege of selling malt or brewed beverages in quantities not in excess of one hundred ninety-two fluid ounces in a single sale to one person, to be carried from the premises by the purchaser thereof.

*Id.*

This language is unambiguous and contains no restriction upon a retail dispenser's ability to sell beer for take-out, beyond the requirement that it be licensed. In fact, the majority admits that nothing in the statute's language mandates the sale of beer for on-site consumption as a prerequisite to the sale of beer for take-out, yet concludes the legislature meant to create such a requirement. Majority Op., at 462–64, 974 A.2d at 1152–53. It bases this conclusion in part on the placement of the phrase "with the privilege [of selling beer for take-out]," which is after and set apart from the phrase, "any person licensed to engage in the retail sale of [beer] for consumption on the premises." *Id.*, at 463, 974 A.2d at 1152 (quoting 47 P.S. § 1–102). However, the location and comma separation of the phrases do not linguistically or logically imply the grant under the latter phrase is contingent upon exercise of the rights given in first. Rather, the phrase placement simply indicates that, beyond its license to sell beer for on-site consumption, a retail dispenser is also legally licensed to sell beer for take-out.

The characterization of the ability to sell beer for take-out as a "privilege" in no way suggests that, should a retail dispenser choose not to sell beer for on-site consumption, such "privilege" is lost. In fact, § 4–442 of the Code—specifically titled "Retail dispensers' restrictions on purchases and

sales"—states "a retail dispenser may ... break the bulk [of its beer] upon the licensed premises and sell or dispense the same for consumption on or off the premises so licensed." 47 P.S. § 4–442(a)(1). This provision, like § 1–102, contains no requirement a retail dispenser sell beer for on-site consumption in order to sell take-out; rather, it unequivocally states the retailer has the discretion to divide its sales as it sees fit. Logically, this division may include the decision to sell all beer as take-out, some beer as take-out, or no take-out at all.

Despite the majority's specific observance that the statute's plain language creates no sale contingency, it refuses to accept what it characterizes as a "hyper-technical interpretation given the wide-ranging ramifications" of accepting the "current loophole." Majority Op., at 465, 974 A.2d at 1154. A loophole is "[a]n ambiguity, omission, or exception (as in a law or other legal document) that *provides a way to avoid a rule* without violating its literal requirements." Black's Law Dictionary 962 (8th ed.2004) (emphasis added). By definition, a loophole cannot exist where there is no behavioral rule, restriction, or requirement—there is no rule being avoided here, for there is no rule on this point at all. The statute's plain language clearly does not require sales on-site, nor does it prohibit a retail dispenser from choosing to sell all its beer for take-out, and one requires no "hyper-technical," linguistic gymnastics to reach such a plain conclusion. As there is no rule or restriction, there can be no loophole, and the majority's characterization of the statute as such is misplaced.

The majority states that "if the Legislature had intended to permit retail dispensers, who do not serve alcohol at their facilities, to sell six-packs to the general public, it surely would have utilized clear language authorizing such sales in a distinct provision of the Code." Majority Op., at 466, 974 A.2d at 1154. This is a misleading argument. There is no license category other than the one that allows both on-site and take-out; it provides that if you are licensed for the former, you may do the latter. If you want to sell take-out, get a retailer's license. There is no need for a separate category.

We are not talking about the authority to sell take-out, but a restriction on the authority to sell take-out. The authority exists by virtue of the license itself; it is given to every retail licensee under the statute. Appellee would have us craft an *exception* to that authority, and the absence of legislative attention to the exception is the telling point. That is, the rule is that one may sell take-out with this license—if on-site sales are a requirement of exercising the privilege, that is an exception to the rule and *that* is what should appear in a "distinct provision."

If the legislature meant to create a sale contingency, it could have done so in the plain language of the definition, restrictions, or prohibitions governing a retail dispenser;[1] however, not a single provision conditions the take-out beer sales on sales for on-site consumption. The absence of specific contingency language from all of these provisions indicates the legislature intended retail dispensers to have discretion in selling their inventory. The majority's creation of such a requirement constitutes nothing short of rewriting the statute.

The best indicator of legislative intent is the plain language of the statute. *See* 1 Pa.C.S. § 1921(a)-(b). The statute says the retail dispenser already has the ability to sell take-out beer, whether incident to consumption on the premises or not. This right exists, "unburdened," without statutory requirement that beer be consumed on premises. If a retail dispenser eliminates the on-premises sales, does that dispenser acquire something other dispensers do not have? No. If one has the right to sell for on-site consumption as well as take-out, and one gives up the on-site sales, are the take-out sales somehow transformed into something that did not otherwise exist? Again, no. Simply put, the issue is subtraction, not addition.

The majority suggests finding for the intervenor will effect a "momentous transformation" of the "market niche legislatively carved for the distributor," as it would allow a retailer to "act as a distributor ... yet not be burdened with the

1. *See, e.g.,* 47 P.S. §§ 4–442, 4–492, 4–493.

restriction of selling beer only by the case." Majority Op., at 464, 974 A.2d at 1153. This ignores the fact that retail dispensers are already permitted to distribute without such "burden." Its fear also ignores the fact that distributors distribute to retailers as well as the public. Ohio Springs will have to buy its beer from a licensed distributor in the first place—distributors will not be selling less beer because of this license. There is no transformation of the system here, much less a momentous one.

Accordingly, I believe the Commonwealth Court's holding should be reversed, and the PLCB's order approving Ohio Springs' license transfer should be affirmed.