**[J-74-2018] [MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COUNTY OF BUTLER, | : | No. 66 WAP 2017 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered June 8, |
| | : | 2017 at No. 1506 CD 2016, reversing |
| v. | : | the Order of the Court of Common |
| | : | Pleas of Butler County entered August |
| | : | 11, 2016 at No. 15-11007, and |
| | : | remanding. |
| CENTURYLINK COMMUNICATIONS, | : | |
| LLC, AND ALL SUBSIDIARIES AND | : | ARGUED:  October 23, 2018 |
| RELATED ENTITIES; THE UNITED | : | |
| TELEPHONE COMPANY OF | : | |
| PENNSYLVANIA, LLC, AND ALL | : | |
| SUBSIDIARIES AND RELATED | : | |
| ENTITIES; CONSOLIDATED | : | |
| COMMUNICATIONS OF | : | |
| PENNSYLVANIA, LLC, AND ALL | : | |
| SUBSIDIARIES AND RELATED | : | |
| ENTITIES; CONSOLIDATED | : | |
| COMMUNICATIONS ENTERPRISE | : | |
| SERVICES, INC., AND ALL | : | |
| SUBSIDIARIES AND RELATED | : | |
| ENTITIES; CORE COMMUNICATIONS, | : | |
| INC., AND ALL SUBSIDIARIES AND | : | |
| RELATED ENTITIES; INTERMEDIA | : | |
| COMMUNICATIONS OF FLORIDA, INC., | : | |
| AND ALL SUBSIDIARIES AND RELATED | : | |
| ENTITIES; VERIZON PENNSYLVANIA, | : | |
| INC., AND ALL SUBSIDIARIES AND | : | |
| RELATED ENTITIES; LEVEL 3 | : | |
| COMMUNICATIONS, LLC, AND ALL | : | |
| SUBSIDIARIES AND RELATED | : | |
| ENTITIES; TELCOVE OF EASTERN | : | |
| PENNSYLVANIA, AND ALL | : | |
| SUBSIDIARIES AND RELATED | : | |
| ENTITIES; AT&T CORP., AND ALL | : | |
| SUBSIDIARIES AND RELATED | : | |
| ENTITIES; TELEPORT | : | |
| COMMUNICATIONS AMERICA, LLC, | : | |
| AND ALL SUBSIDIARIES AND RELATED | : | |
| ENTITIES; US LEC OF PENNSYLVANIA, | : | |

LLC, AND ALL SUBSIDIARIES AND          :
RELATED ENTITIES; BANDWIDTH.COM        :
CLEC, LLC, AND ALL SUBSIDIARIES        :
AND RELATED ENTITIES; COMCAST          :
PHONE OF PENNSYLVANIA, LLC, AND        :
ALL SUBSIDIARIES AND RELATED           :
ENTITIES; PEERLESS NETWORK OF          :
PENNSYLVANIA, LLC, AND ALL             :
SUBSIDIARIES AND RELATED               :
ENTITIES; AND ABC COMPANIES 1          :
THROUGH 20,                            :
                                       :
                 Appellants          :

## CONCURRING OPINION

**JUSTICE WECHT**                                **DECIDED:  APRIL 26, 2019**

I join the learned Majority Opinion.  I write separately to address Butler County's suggestion that we defer to what it asserts is the position of the Pennsylvania Emergency Management Agency on the question presented.  Specifically, the County asks that we credit the statutory interpretation ventured in the affidavit of PEMA's Deputy Director for 911 Services, Robert Mateff.  The County offered Mr. Mateff's affidavit for the first time as an attachment to its motion seeking reconsideration of the trial court's ruling sustaining defendants' preliminary objections.  The Majority briefly considers, and aptly rejects, the County's effort in this regard.  *See* Maj. Op. at 18-20.

I cannot agree more adamantly with the Majority's comments regarding the dubiousness of Mr. Mateff's affidavit, which I find as textually unpersuasive as it is unsettling in its implications.  The issue at bar has formed the basis for numerous cases

statewide. *See* Maj. Op. at 18-19.[1] Yet the only evidence we have of PEMA's (non)enforcement policy is an affidavit describing a unilateral assumption that was neither formalized nor conveyed to the counties allegedly suffering a burden PEMA foisted upon them *sub silentio*. This suggests an abdication at least of PEMA's self-evident responsibility to inform the affected communities of PEMA's views and afford them an opportunity to share their concerns on a matter of such consequence. Worse still, it arises against a broadly-worded statutory duty to enforce the Act, which, at a minimum, should not have been cast aside without due deliberation and transparency. *See id.* at 19 ("[I]t seems rather clear that the agency is disregarding its duties under its own enabling legislation."); 35 Pa.C.S. § 5303(a)(12) (superseded) (assigning PEMA the "dut[y] . . . [t]o take the actions necessary to implement, administer and enforce the provisions of this chapter"). Even if that duty is amenable to more than one reasonable interpretation, as the Majority generously allows, *see* Maj. Op. at 17-18, such ambiguity provides the strongest indication that it was incumbent on PEMA to address the matter more rigorously and transparently than it has done.

It is precisely to avoid the arbitrariness that attends such a hasty, conclusory, unreasoned submission that this Court and the United States Supreme Court have refused to defer to an agency opinion where "there [was] nothing in the record indicating that the [agency] had considered and decided [the] issue at a point prior to the instant

---

[1] Evidently, pervasive actions challenging the adequacy of enforcement and collections relative to the funding of 911 services are not a phenomenon peculiar to Pennsylvania. According to the joint brief of *amici curiae* the United States Chamber of Commerce and the Pennsylvania Chamber of Business and Industry, an entity called Phone Recovery Services has marketed contingency fee-based outside representation to government entities to pursue such claims, a practice *amici* explain and criticize at length. *Amici Curiae* Brief for Chambers of Commerce at 19-27.

litigation." *Malt Beverages Distrib. Ass'n v. Pa. Liquor Control Bd.*, 974 A.2d 1144, 1154 (Pa. 2009). "Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988).

Here, we have an *ad hoc* statutory interpretation, developed with no formality or deliberation whatsoever, as far as we know only upon the occasion of this or similar litigation, concerning upon whom the General Assembly intended to impose the duty in the first instance—not what that duty might require of PEMA. On no account can that question be thought to be a regulatory matter informed by PEMA's expertise. *Cf. Seeton v. Pa. Game Comm'n*, 937 A.2d 1028 (Pa. 2007) (rejecting the Game Commission's attempt to confine the scope of its duty based upon what the Court found to be an untenable statutory interpretation). Whether a statute imposes a given duty manifestly is a pure question of law that a court should consider *de novo,* privileging no advocate's view to a greater extent than its legal merit warrants. *See Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 41 n.27 (1977) (expressing doubts regarding the relevance of agency expertise to gleaning whether a private right of action was intended by Congress, a question "peculiarly reserved for judicial resolution"); *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 145 n.8 (2011) (reaffirming *Piper*); *Snyder Brothers v. Pa. Pub. Utility Comm'n*, 198 A.3d 1056, 1083 (Pa. 2018) (Wecht, J., concurring) ("Statutory interpretation is an important part of the work that we do. We do not subcontract that interpretive enterprise to administrative agencies.").

In none of its forms has agency deference ever vindicated such casual and consequential agency decision-making. Whatever legal standard we apply, we owe no deference to a *post* and *ad hoc* interpretation offered for the first time in litigation.