# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Western Pennsylvania Annual : 
Conference of the United Methodist : 
Church : 
                                                  : No. 1411 C.D. 2017
                v. : Argued: May 9, 2018
                           :
City of Pittsburgh, :
                      Appellant : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION**
**BY JUDGE SIMPSON**                  **FILED: June 11, 2018**

        In this appeal, the City of Pittsburgh (City) asks whether the Court of Common Pleas of Allegheny County (trial court) erred in vacating the Council of the City of Pittsburgh's (City Council) designation of a structure as historic. The dispositive issue is whether, under the Pittsburgh Code (Code), a structure may be designated "historic" where the structure's owner objects to the designation and City Council does not vote in favor of the designation, but rather the designation occurs as a result of City Council's inaction, *i.e.*, its deemed approval. Concluding it may not, we affirm the trial court's vacation of the "deemed" historical designation.

## I. Background

The property at issue is located at 486 South Graham Street in the City (subject property).  The subject property is improved with a structure that housed what was formerly known as the Albright Community United Methodist Church (Church).  The owner of record of the subject property is the Western Annual Conference of the United Methodist Church (Conference).  All real estate owned by Methodist churches, although often held in the name of the local church, is encumbered by a trust imposed through church law and recognized by the Supreme Court of Pennsylvania.  Tr. Ct., Slip Op., 11/20/17, at 2 (citing W. Pa. Conference of United Methodist Church v. Everson Evangelical Church of N. Am., 312 A.2d 35 (Pa. 1973)).

In November 2013, the Church ceased occupying the structure on the subject property.  As a result, the subject property fell into a state of disrepair.  When the Church became unable to maintain, support and use the subject property, the Conference began to pay certain costs and expenses and otherwise maintain and secure the subject property.

In August 2015, certain individuals submitted a nomination to the City's Historic Review Commission (HRC) to designate the subject property as historic.  This nomination included a letter on Church stationery that purported to show the owner's consent.  When the Conference became aware of the nomination, it contacted the City's Law Department to notify it that the Conference was the owner of the subject property.  As a result, the HRC declined to accept the first nomination petition.

Thereafter, an individual filed a second nomination petition with the HRC to designate the structure on the subject property as historic. The Conference objected to the nomination. Despite the Conference's objection, the HRC accepted the second nomination, and it notified the Conference that it was prohibited from exercising certain property rights, including altering the exterior of the structure on the subject property.

The Conference's Chancellor wrote to the HRC to provide further opposition to the HRC's consideration of the historic nomination. Thereafter, Conference representatives attended the HRC's February 2016 public meeting and objected to consideration of the nomination on various grounds, including that the HRC lacked jurisdiction under the Code. Over the Conference's objection, the HRC received evidence on the nomination.

In March 2016, the HRC conducted a second hearing on the nomination at which the Conference again objected. The HRC voted to recommend that the subject property be designated historic over these objections.

Approximately two months later, the City Planning Commission (Planning Commission) held a public hearing on the second nomination. Counsel for the Conference appeared and objected to the jurisdiction of the Planning Commission and the City concerning the second nomination. Nevertheless, the Planning Commission voted to approve the second nomination. The Planning Commission transmitted its decision to City Council.

In June 2016, a resolution regarding the second nomination of the subject property was introduced before City Council and was read and referred to a committee. The Conference submitted a written objection to the nomination to the City Clerk in July 2016. Thereafter, City Council held a public hearing.

Both the Conference's Chancellor and its counsel appeared at the hearing and contested the nomination and the City's jurisdiction to deem the property historic. *City Council never voted on whether the subject property should be designated historic.* Nevertheless, the City Clerk issued an official disposition reflecting that the status of the designation of the structure on the subject property as historic "Passed Finally" and "Passed pursuant to Case Law." Tr. Ct., Slip Op., at 4; Certified Record (C.R.), Item #1, Ex. 1. The Conference filed an appeal to the trial court.

Before the trial court, the parties filed briefs and presented oral argument. Thereafter, the trial court issued an order sustaining the Conference's appeal and vacating the historic designation of the structure on the subject property. The City filed a notice of appeal to this Court, and the trial court directed it to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which it did. The trial court subsequently issued an opinion pursuant to Pa. R.A.P. 1925(a) in which it explained the rationale for its order. Of particular relevance here, the trial court explained:

> The [Code] is clear in that, where the owner of a nominated property objects to the proposed historic designation, the designation of a nominated structure, site, or object shall require the affirmative vote of six (6) members of City Council. Despite the [Conference's]

4

continuous objections at each and every step of these proceedings, the City erroneously and unconstitutionally concluded that a deemed approval occurred despite written opposition by the owner.

An approval without City Council action is only appropriate if the owner of the property failed to object to the recommendations made by the HRC and Planning Commission. In the case *sub judice*, the [Conference] has strenuously and consistently objected to the City's recommendation. The [Code] provides that, '[t]he designation of a nominated structure, site, or object shall require the affirmative vote of six (6) members of [City] Council if the owner or [sic] record of the property has submitted to [City] Council his or her written and signed opposition to the designation of the property[.]' [Section 1101.03(j)(2) of the Code.] An affirmative vote by six (6) members of City Council has yet to occur.

Tr. Ct., Slip Op., at 9-10 (footnotes omitted). This matter is now before us for disposition.

## II. Issues

On appeal, the City presents three issues:

[1] Did the [trial court] abused [sic] its discretion when there was substantial evidence in the record for the [l]ocal [a]gency to find that the structure in this case was no longer being used for religious worship, and thus was not eligible for the narrowly tailored self-nomination exception for historic designation of religious structures used as a place of religious worship per [Title 11 of the Code] - Historic Preservation?

[2] Did the [trial court] abuse its discretion by not deferring to the [l]ocal [a]gency's interpretation and application of Title 11 of the technical term 'religious structure' and the City's precedence for accepting and approving historic nomination of religious structures no longer used as places of religious worship in the past?

5

[3] Did the [trial court] make an error of law in ascertaining the legislative intent of Title 11 per the rules of statutory construction, pursuant to 1 Pa. [C.S.] §§1901, 1903, 1921, 1922, 1923, 1932 and 1934 (1972), which required the [trial court] to consider, among other things, the presumed [c]onstitutional intent of [the City], the occasion and necessity for the [o]rdinance under review here, the circumstances under which this [o]rdinance was enacted, the technical use of the word 'religious structure' in historic nomination proceedings in the [City], and the administrative interpretations of [Title 11 of the Code]?

Appellant's Br. at 10-11.

## III. Discussion
## A. Contentions

In their briefs to this Court, the parties focus heavily on the issue of whether the structure on the subject property is still used for religious purposes as it relates to who may nominate a structure for an historic designation. However, the parties devote little attention to the issue of whether a structure can be designated "historic" under the Code where its owner objects to the designation and City Council does not vote in favor of the designation, but rather the structure is designated "historic" as a result of City Council's inaction, *i.e.*, its "deemed approval."[1]

On this latter issue, the City points out that, at the end of its opinion, the trial court stated that an affirmative vote by six members of City Council had yet to occur here. The City asserts the trial court did not indicate if that fact was probative to its conclusion. However, the City argues, the Conference waived its

---

[1] Because this issue is one of statutory construction, which is a pure question of law, our standard of review is *de novo* and our scope of review is plenary. A. Scott Enters. v. City of Allentown, 142 A.3d 779 (Pa. 2016).

6

right to review City Council's deemed approval of the historic designation when the Conference "refused the opportunity to request an affirmative vote of six (6) member [sic] of City Council at Settlement Conferences." Appellant's Br. at 40.[2]

In any event, the City contends, the Code's "deemed approval" provision, see Section 1101.03(j)(3) of the Code, was more recently enacted than the provision requiring an affirmative vote by City Council, see Section 1101.03(j)(2) of the Code. Further, the City asserts the deemed approval provision affords deference to the administrative bodies with expertise in this area, which both recommended the historic designation here. The City therefore argues the deemed approval provision should control over the provision requiring an affirmative vote of six City Council members. See 1 Pa. C.S. §1934 ("Irreconcilable clauses in the same statute") ("[W]henever, in the same statute, several clauses are irreconcilable, the clause last in order of date or position shall prevail."). Because Section 1101.03(j)(3) of the Code was enacted last in time and order, the City asserts, City Council properly utilized that provision here. Id.

The Conference responds that the City waived for appellate review the issue regarding the requirement of six affirmative votes by City Council because the City did not raise this issue in its Pa. R.A.P. 1925(b) Statement. The Conference argues the City's Pa. R.A.P. 1925(b) Statement in no part references the trial court's conclusion that, where the owner of a nominated property submits its written

---

[2] The City offers neither a record citation nor any developed explanation in support of this assertion. "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him." Banfield v. Cortes, 110 A.3d 155, 168 n.11 (Pa. 2015) (quoting Wirth v. Commonwealth, 95 A.3d 822, 837 (Pa. 2014)).

7

objection to City Council, an affirmative vote of six City Council members is required. Because the City was well aware that this issue was raised in the Conference's appeal to the trial court, see Supplemental Reproduced Record (S.R.R.) at 13b, and briefed and argued before the trial court, the Conference asserts, the City's choice to omit this issue from its Pa. R.A.P. 1925(b) Statement bars review.

As to the merits of this issue, the Conference contends City Council never voted on whether the structure should be designated historic. The Conference acknowledges the Code states that, where both the HRC and the Planning Commission recommend that a property be designated historic, City Council's failure to vote within 120 days after receipt of the Planning Commission's decision constitutes a deemed approval of the historic designation. See Section 1101.03(j)(3) of the Code. However, it asserts, where the record owner of a nominated property objects to the proposed historic designation, "[t]he designation of a nominated structure, site, or object shall require the affirmative vote of six (6) members of [City] Council …." Section 1101.03(j)(2) of the Code. The Conference contends the City erroneously concluded a deemed approval occurred here, despite the absence of the required affirmative vote of six members of City Council. The Conference further argues it is only where an owner does not object, and the HRC and Planning Commission recommend approval, that a deemed approval can occur through City Council's inaction. See Section 1101.03(j)(3) of the Code.

**B. Analysis**

8

The "Historic Preservation" regulations are set forth in Title 11 of the Code. Chapter 1101 governs "Historic Structures, Districts, Sites and Objects." Further, Section 1101.03 of the Code states, in pertinent part (with emphasis added):

**§ 1101.03 - DESIGNATION OF HISTORIC STRUCTURES, DISTRICTS, SITES AND OBJECTS.**

**\* \* \* \***

(j) (1) The designation of a nominated district, structure, site or object shall require the affirmative vote of six (6) members of [City] Council if either the [HRC] or the City Planning Commission (or both) recommends against designation. The lack of a recommendation from either Commission shall not be considered as a recommendation that [City] Council either designate or not designate the nominated district, structure, site or object.

(2) The designation of a nominated structure, site, or object shall require the affirmative vote of six (6) members of [City] Council if the owner of record of the property has submitted to [City] Council his or her written and signed opposition to the designation of the property.

(3) Where [City] Council fails to render its decision within the period required by this subsection, or fails to hold the required public hearing within one hundred twenty (120) days from the date of the [HRC] and the Planning Commission's recommendations, the failure of [City] Council to act shall be a deemed approval if both the [HRC] and the Planning Commission gave affirmative recommendations for the historic designation.

(4) If the proposed historic designation received a negative recommendation from either the [HRC] or the Planning Commission, then the failure of City Council to act will be a deemed denial.

(5) If the proposed historic designation did not receive any recommendation from the [HRC] or the Planning

9

Commission, then the failure of City Council to act will be a deemed denial.

Section 1101.03(j) of the Code.

In addition, the Code contains the following relevant "Rules of Construction" (with emphasis added):

(a) For the purposes of the Code the following rules of construction shall be observed unless otherwise provided in the Code and unless the context clearly indicates otherwise and unless the application of such rules would result in a construction inconsistent with the manifest intent of [City] Council:

(1) 'Shall' is mandatory and 'may' is permissive.

(2) The arrangement and classification of the Code have been made for the purpose of a convenient and orderly arrangement. No inference, implication or presumption of legislative construction shall be drawn because of the location of any provision, nor shall any outline, analysis, index or descriptive matter relating to the contents of the Code be given any legal effect. …

(b) Unless otherwise provided in the Code, the rules of construction set forth in Subchapters A to E of Chapter 19 (Rules of Construction) of the Statutory Construction Act of 1972, as amended (1 Pa. C.S. § 1901 to [§] 1978) shall be observed in the construction of Code unless the context clearly indicates otherwise or unless the application of such rules would result in a construction inconsistent with the manifest intent of [City] Council.

Sections 101.04(a)(1), (2), (b) of the Code.

Pursuant to the Statutory Construction Act, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the [legislative body]. Every statute shall be construed, if possible, to give effect

10

to all its provisions." 1 Pa. C.S. §1921(a). In pursuing that end, we are mindful that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. §1921(b). Further, in ascertaining and effectuating legislative intent, "we do not interpret statutory words or phrases in isolation, but must read them with reference to the context in which they appear." Bailets v. Pa. Tpk. Comm'n, 181 A.3d 324, 333 (Pa. 2018).

"Often, the best indicator of legislative intent is the plain language of the statute." A. Scott Enters. v. City of Allentown, 142 A.3d 779, 786 (Pa. 2016). It is only when "the words of the statute are not explicit" on the point at issue that resort to statutory construction is appropriate. 1 Pa. C.S. § 1921(c); Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd., 974 A.2d 1144, 1149 (Pa. 2009). Additionally, in ascertaining legislative intent, the Statutory Construction Act "requires a presumption that the [legislative body] did not intend a result that is absurd or unreasonable." 1 Pa. C.S. §1922(1); Malt Beverages Distribs., 974 A.2d at 1149.

In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. §1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. §1921(a).

11

In support of its assertion that the "deemed approval" provision in Section 1101.03(j)(3) of the Code applies here, the City relies on Section 1934 of the Statutory Construction Act, asserting that, because Sections 1101.03(j)(2) and (j)(3) of the Code are irreconcilable, Section 1102.03(j)(3) prevails as it is last in time and order. We reject this assertion for several reasons.

First, the City did not raise this issue in its Pa. R.A.P. 1925(b) Statement, see S.R.R. at 26b-29b; therefore, it is waived. Pa. R.A.P. 1925(b)(4)(vii); Commonwealth v. Hill, 16 A.3d 484, 494 (Pa. 2011) ("[A]ny issues not raised in a [Pa. R.A.P.] 1925(b) statement will be deemed waived[.]").[3]

---

[3] Pursuant to Pa. R.A.P. 1925(b)(4)(vi): "If the appellant in a civil case cannot readily discern the basis for the judge's decision, the appellant shall preface the Statement with an explanation as to why the Statement has identified the errors in only general terms. In such a case, the generality of the Statement will not be grounds for finding waiver." Further, the *Note* to Pa. R.A.P. 1925(b)(4) states (with emphasis added): "This paragraph … recognizes that there may be times that a civil appellant cannot be specific in the Statement because of the non-specificity of the ruling complained of on appeal. In such instances, civil appellants may seek leave to file a supplemental Statement to clarify their position in response to the judge's more specific Rule 1925(a) opinion."
Here, at the conclusion of its Pa. R.A.P. 1925(b) Statement, the City stated:

> [The City] hereby reserves the right to supplement this *Concise Statement of Matter [sic] Complained of on Appeal* upon receipt and review of the transcript and the judicial opinion from the [trial court] pursuant to Pa.R.A.P. []1925(a)(1) because [the City] has no way to anticipate the [trial] [c]ourt's rationale for its order until said review is completed and as such [the City] should not be penalized for failure to include an issue or issues that could not be known until clarification is made by the [trial court's] Rule 1925(a)(1) opinion. *Commonwealth v. Poncala*, 915 A.2d 97at [sic] 100 (Pa. Super 2006) (citing *Commonwealth v. Zheng*, 908 A.2d 285 at [sic] 288 (Pa.Super.2006) [sic]).

Supplemental Reproduced Record at 28b-29b. Despite this statement, there is no indication that the City sought leave to file a supplemental Pa. R.A.P. 1925(b) Statement here.

12

Further, even if not waived, the City's argument fails. Contrary to the City's assertion that Section 1101.03(j)(3) of the Code controls over Section 1101.03(j)(2) because Section 1101.03(j)(3) is last in order, the Code expressly states: "The arrangement and classification of the Code have been made for the purpose of a convenient and orderly arrangement. <u>No inference, implication or presumption of legislative construction shall be drawn because of the location of any provision</u> …." Section 101.04(a)(2) of the Code (emphasis added). Further, contrary to the City's contentions, Section 1101.03(j)(3) was *not* enacted more recently than Section 1101.03(j)(2). Indeed, our review of the "Code Comparative Table – Ordinances" reveals that both provisions (and indeed the entirety of subsection (j)) were enacted by Ordinance 27-2008, which became effective on January 1, 2009.

More importantly, we disagree with the City that Sections 1101.03(j)(2) and (3) are irreconcilable. The City relies on Section 1934 of the Statutory Construction Act, which states: "Except as provided in section 1933 of this title (relating to particular controls general), whenever, in the same statute, several clauses <u>are irreconcilable</u>, the clause last in order of date or position shall prevail." 1 Pa. C.S. §1934 (emphasis added).

Pursuant to Section 1101.03(j)(2) of the Code: "The designation of a nominated structure, site, or object shall require the affirmative vote of six (6) members of [City] Council <u>if the owner of record of the property has submitted to [City] Council his or her written and signed opposition to the designation of the property</u>." (Emphasis added.) Thus, where the owner of record objects to the

13

historical designation of its property, such designation requires the affirmative vote of six City Council members.  Id.

On the other hand, Section 1101.03(j)(3) of the Code states: "Where [City] Council fails to render its decision within the period required by this subsection, or fails to hold the required public hearing within one hundred twenty (120) days from the date of the [HRC] and the Planning Commission's recommendations, the failure of [City] Council to act shall be a deemed approval if both the [HRC] and the Planning Commission gave affirmative recommendations for the historic designation."  This Section makes no mention of an objection by the owner of record of the property.  Id.  Therefore, Section 1101.03(j)(3) applies where City Council fails to issue a timely decision (or hold a timely hearing), both the HRC and the Planning Commission provide affirmative recommendations for the historic designation, and the owner of record does *not* object to the historical designation of its property.  To construe the deemed approval provision otherwise would effectively impinge on an objecting property owner's due process property rights.

As a result, Sections 1101.03(j)(2) and (j)(3) are not irreconcilable. Instead, the two provisions address two different scenarios: (1) where the owner of record objects to the historical designation of its property (Section 1101.03(j)(2)); and (2) where the owner of record does *not* object to the historical designation of its property and both the HRC and the Planning Commission give affirmative recommendations for the historic designations (Section 1101.03(j)(3)).[4]

---

[4] Moreover, even if Sections 1101.03(j)(2) and (j)(3) were deemed irreconcilable, the City would not be entitled to the result it seeks.  To that end, Section 1933 of the Statutory Construction Act ("Particular controls general") states (with emphasis added):

Here, the Conference, the owner of record of the structure on the subject property, submitted to City Council its written and signed opposition to the historical designation of its property. Reproduced Record at 365-67. Therefore, the historical designation of the nominated structure required the affirmative vote of six members of City Council. Section 1101.03(j)(2) of the Code. There is no dispute that City Council here never voted on whether the structure on the subject property should be designated historic. See C.R., Item #1 at 10 (¶47), Item #5 at 2 (¶14). Therefore, it is clear that the designation of the nominated structure on the subject property received *no* affirmative votes by City Council. Id. Under these circumstances, the historical designation of the nominated structure on the subject property was improper. Section 1101.03(j)(2) of the Code. Thus, the trial court properly vacated that designation on this basis. Tr. Ct., Slip Op., at 9-10.

Accordingly, we affirm.

---

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa. C.S. §1933.

Applying these principles here, Section 1101.03(j)(2) is more specific than Section 1101.03(j)(3) in that it pertains to the specific situation in which the owner of record of property subject to a nomination for historic designation objects, while Section 1101.03(j)(3) more generally pertains to City Council's inaction where both the HRC and the Planning Commission provide affirmative recommendations for the historic designation without regard for the owner's preference. Thus, even if the two provisions were deemed irreconcilable, the more specific provision, Section 1101.03(j)(2), would prevail.

15

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Western Pennsylvania Annual : Conference of the United Methodist : Church :
: No. 1411 C.D. 2017
v. :
:
City of Pittsburgh, :
Appellant :

# **O R D E R**

**AND NOW**, this 11th day of June, 2018, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge