Kirk B. Burkley, Todd L. Kilgore : 
and Jeffrey Diurba :
 :
            v.                             : No. 37 C.D. 2019
 : Argued:  October 4, 2019
Council of the City of Pittsburgh, :
 :
                    Appellant   :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  October 24, 2019


The Council of the City of Pittsburgh (City Council) appeals the order of the Allegheny County Court of Common Pleas overruling City Council's vote to not enact a Resolution for the nomination submitted by Kirk B. Burkley, a member of the Department of City Planning, and landowners Todd L. Kilgore and Jeffrey Diurba (collectively, Nominators) to expand the boundaries of the Mexican War Streets National Historic District (District) in the City and remanding the matter to the City Council to approve the Resolution.  We affirm.

On October 2, 2012, Nominators submitted the required form to the City's Department of City Planning under the City's Code of Ordinances (Code) to expand the District.[1]  *See* Reproduced Record (R.R.) at 14a-59a.  On October 15,

---

[1] Section 1101.03(a)(1)(a)(3) and (6) of the Code states, in relevant part:
**(Footnote continued on next page…)**

2012, the Director of City Planning notified property owners within the proposed expanded area of the District of the nomination and informed them of a public hearing for comment regarding the nomination. *Id.* at 60a. On November 8, 2012, the City's Historical Review Commission (HRC) made a preliminary determination of the validity of the proposed expansion in that it meets one of the

---

**(continued…)**

> Nomination of an area . . . for consideration and designation as a . . . Historic District . . . shall be submitted to the Historical Review Commission [(HRC)] on a form prepared by the [HRC], and may be submitted by any of the following:
>
> * * *
>
> 3. A member of the City Planning Commission.
>
> * * *
>
> 6. In the case of a nomination as a Historic District, by community-based organizations . . . accompanied by a petition signed by the owners of record of twenty-five (25) percent of the properties within the boundaries of the proposed District[.]"

R.R. at 2a. The form submitted herein states, in pertinent part:

> This nomination is being made by a member of the Department of City Planning. However, the two community groups, Central Northside Neighborhood Council and Mexican War Streets Society have a combined membership of over 300. Both CNNC and MWSS have championed this application. With 750 households in the National Historic District, a membership of 300 supporting this application through their community based organizations would suggest that the 25% threshold has been met[.]

*Id.* at 19a. The nomination was signed by Burkley, Barbara Talerico, CNNC's Treasurer, and Paul Johnson, MWSS's President. *Id.* at 20a.

2

historical criteria for approval and has "historical integrity," and that the HRC would take further public comment at their December 5, 2012 monthly public hearing. *Id.* at 82a. At the conclusion of its December 5, 2012 public hearing, the HRC issued the following: "**Recommendation: The proposed Mexican War Streets Historic District expansion with revised boundaries should be listed as a City designated historic district under Section 1101.04(b)(3).**[2]" *Id.* at 84a (emphasis in original).

On December 10, 2012, the City's Department of Planning sent the HRC's recommendation to the City's Planning Commission and a copy to the City's Solicitor, Assistant Solicitor, and Councilman Daniel Lavelle, the representative for Pittsburgh District 6. R.R. at 132a. On January 8, 2013, January 22, 2013, and February 5, 2013, the City's Planning Commission held public hearings on the HRC's recommendation to expand the District. *Id.* at 133a-152a. At the conclusion of the February 5, 2013 meeting, the City's Planning Commission unanimously approved a motion: "That the Planning Commission [] provides City Council with a positive recommendation that the proposed [District] Expansion, with the original National Historic Registry boundaries and should be listed as part of the Historic District." *Id.* at 151a, 247a-249a.

---

[2] Section 1101.01(b)(3) of the Code states, in relevant part:

> The [HRC] shall limit its consideration to the following criteria in making a determination on a nomination of an area . . . for designation by ordinance as a . . . Historic District[.]
>
> (3) Its exemplification of an architectural type, style or design distinguished by innovation, rarity, uniqueness, or overall quality of design, detail, materials, or craftsmanship[.]

R.R. at 6a.

3

On February 7, 2013, the Director of City Planning sent Nominators a letter informing them "that the City's Planning Commission has made a recommendation to City Council to expand the [] District." R.R. at 155a. In relevant part, the letter stated:

> [T]he [HRC], after considering historic criteria and hearing public testimony, decided to recommend to City Council that the district be expanded, but with a reduced boundary. . . . On February 5, 2013, the Planning Commission decided to recommend to City Council that the district be expanded using the original boundary that was submitted with the nomination[.]
>
> Since the HRC and the Planning Commission have made their recommendations, the matter will now be taken to City Council, who will vote on the expansion of the historic district within one hundred twenty (120) days. Before any vote is taken, Council is required to hold public hearings and take public comment as well. Please expect to receive further communications on the timing of these hearings directly from City Council.

*Id.* Again, a copy of the letter was sent to the City's Solicitor, Assistant Solicitor, and Councilman Lavelle, the representative for Pittsburgh District 6. *Id.*

On March 5, 2013, at City Council's Regular Meeting, a "Resolution providing for the designation as an Historic District under Section 1101.03 of [the Code] that certain district known as the Mexican War Streets Historic District Expansion"[3] was "[r]ead and referred" to the City Council's Land Use and Economic Development Committee. R.R. at 156a, 157a. On March 13, 2013, a motion was passed for a hearing on the Resolution by the Committee on Land Use and Economic Development, and on June 17, 2013, a public hearing was held on

---

[3] *See* R.R. at 158a-178a.

the Resolution. *Id.* at 156a, 157a, 251a, 264a, 265a. On June 19, 2013, City Council approved a motion to read, receive, and file a Report of the Committee on Land Use and Economic Development for a negative recommendation with respect to the Resolution. *Id.* at 156a, 286a. On June 25, 2013, the City Council voted unanimously to not enact the Resolution. *Id.* at 156a, 286a.

On July 24, 2013, Nominators filed a statutory appeal in the trial court alleging, *inter alia*, that City Council failed to hold a public hearing on the Resolution within 120 days of its receipt of the HRC's December 5, 2012 recommendation and the City's Planning Commission's February 5, 2013 recommendation to expand the boundaries of the Historic District as required by Section 1101.03(i)(4) of the Code.[4] Nominators asserted that, as a result of City Council's failure to act within the requisite 120 days of receipt of the foregoing recommendations, the Resolution was deemed approved by City Council pursuant to Section 1101.03(j)(3) of the Code.[5] Specifically, Nominators claimed that "[t]he deadline for City Council to hold the required public hearing pursuant to [] Code

---

[4] Section 1101.03(i)(4) of the Code states, in pertinent part, "City Council shall vote on the designation of a nominated district . . . within one hundred twenty (120) days of Council's receipt of the recommendations of the [HRC] and the City Planning Commission." R.R. at 6a.

[5] Section 1101.03(j)(3) of the Code states:

> Where Council fails to render its decision within the period required by this subsection, or fails to hold the required public hearing within one hundred twenty (120) days from the date of the [HRC] and the Planning Commission's recommendations, the failure of Council to act shall be a deemed approval if both the [HRC] and the Planning Commission gave affirmative recommendations for the historic designation.

R.R. at 6a.

5

§1101.03(j)(3) was June 5, 2013, in that said date is 120 days from the later of the affirmative recommendations," and that "[t]he [R]esolution for expansion of the [] Historic District is deemed approved pursuant to [] Code §1101.03(i)(4) because City Council failed to vote on the designation of [the] nominated district within 120 days of Council's receipt of the recommendations of the [HRC] and the City Planning Commission." R.R. at 295a, 296a. Following the filing of briefs and oral argument, the trial court issued an order that "overturned" City Council's "decision . . . to deny the Resolution" and remanded the matter "to City Council for approval of the Resolution." *Id.* at 409a.[6] City Council then filed the instant appeal.[7]

---

[6] The trial court explained the rationale for its order, in relevant part, as follows:

> The Court interprets §1101.03(i)(4) to provide that the 120-day time limit begins when City Council receives actual notice that both the Planning Commission and the HRC have recommended a historic designation, not when a quorum of City Council acknowledges such notice. With respect to what constitutes effective notice, the City Code does not explicitly require that receipt be by a quorum of City Council, nor does it state that receipt by one Councilperson is sufficient. In the present case, it is clear that a Councilperson, as well as the City Solicitor and an Assistant City Solicitor[, attorneys who represent the City's and City Council's interests], received a copy of a February 7, 2013 correspondence indicating that the Planning Commission had recommended the Nomination. This correspondence also advised that City Council would vote on the proposed expansion within 120 days. The Court finds that a reasonable definition of "receipt" includes the present circumstances, where a Councilperson, as well as two attorneys who represent the City, were served with notice via a correspondence that both the HRC and the Planning Commission had rendered affirmative recommendations, and further where the correspondence expressly states that a decision would be rendered within 120 days. To accept City Council's definition of "receipt" would open the door to absurd results, where City Council could let months pass without publicly acknowledging recommendations made by the HRC and the

**(Footnote continued on next page…)**

6

Planning Commission, thus tolling, potentially indefinitely, the clear 120-day requirement imposed by §1101.03(j)(3) and §1101.03(i)(4). Accordingly, for the reasons discussed above, the Court holds that the date that City Council received affirmative recommendations from the HRC and the Planning Commission was February 7, 2013, the date that a copy of the correspondence regarding the Planning Commission's recommendation was sent to a City Councilperson, the City Solicitor, and an Assistant City Solicitor.

City Council was in receipt of the affirmative recommendations of the HRC and the Planning Commission on February 7, 2013. Accordingly, the June 17, 2013 public hearing occurred 130 days after City Council's receipt of the recommendations, City Council's June 19, 2013 initial vote occurred 132 days after receipt, and City Council's June 25, 2013 decision was rendered 138 days after receipt. In any case, City Council failed to act within 120 days of receipt of the affirmative recommendations of the HRC and the Planning Commission. Therefore, City Council's failure to act within the requisite 120 days resulted in the deemed approval of the Resolution, and City Council's decision to not approve the Resolution was in error. This Court will remand this matter to City Council for approval of the Resolution for Expansion of the [Historic District].

R.R. at 407a-408a.

[7] As a preliminary matter, because the trial court's order remands the matter to City Council to approve the Resolution, by January 24, 2019 order, this Court directed the parties to address the appealability of the trial court's order in their principal briefs on the merits citing Pa. R.A.P. 311(f). Pa. R.A.P. 311(f) states, in relevant part:

An appeal may be taken as of right from: (1) an order of a common pleas court . . . remanding a matter to an administrative agency or hearing officer for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of administrative discretion; or (2) an order of a common pleas court . . . remanding a matter to an administrative agency or hearing

**(Footnote continued on next page…)**

7

In this appeal,[8] City Council claims that the trial court erred in determining that City Council failed to act within 120 days of its receipt of the recommendations of the HRC and the City's Planning Commission as required by Section 1101.03(i)(4) of the City's Code and that the Resolution was deemed approved under Section 1101.03(j)(3) of the Code. Specifically, City Council asserts that the City Code directs that the City Clerk has custody of all of the papers presented to the City Council, and that City Council's Rules direct that the first order of business of all of its regular meetings includes the presentation of letters such as the Director of City Planning's February 7, 2013 letter notifying the parties of the approval of the nomination. Moreover, the Rules provide that a quorum consists of a majority of the nine-member Council, which applies to regular meetings, and case law requires that Council may only perform official acts as a body, *see, e.g.*, *Edsall v. Jersey Shore Borough*, 70 A. 429, 431 (Pa. 1908),

---

**(continued…)**

officer that decides an issue that would ultimately evade appellate review if an immediate appeal is not allowed.

In this case, the trial court's order is clearly appealable because it directs a non-discretionary act on remand and the issue would evade appellate review if we were to deny the appeal. *But cf. Nine Penn Center Association v. City of Philadelphia Board of Revision of Taxes*, 669 A.2d 1047, 1050 (Pa. Cmwlth. 1995) (holding that a trial court order remanding a case to the board of revision of taxes to determine the amount of an exemption owed to taxpayers under the Local Economic Revitalization Tax Assistance Act, Act of December 1, 1977, P.L. 237, *as amended*, 72 P.S. §§4722–4727, based upon the assessed value of improvements to property was not appealable under Pa. R.A.P. 311(f) because the determination of the value of real estate involves the exercise of discretion).

[8] "Because th[e] issue is one of statutory construction, which is a pure question of law, our standard of review is *de novo* and our scope of review is plenary." *Western Pennsylvania Annual Conference of the United Methodist Church v. City of Pittsburgh*, 188 A.3d 637, 640 n.1 (Pa. Cmwlth. 2018) (citation omitted).

8

and one single member cannot bind the whole. *See, e.g.*, *City of Scranton v. Feffler, Radetick & Saitta, LLP*, 871 A.2d 875 (Pa. Cmwlth. 2005). As a result, the copying of the February 7, 2013 letter to a single Councilman cannot be construed as Council being "in receipt" of the nomination until a quorum of Council received the recommendation through the City Clerk under the Code.

Additionally, City Council submits that there is a conflict between the relevant Code provisions because under Section 1101.03(i)(4), Council must act within 120 days of *receipt* of the HRC and Planning Commission recommendations, while under Section 1101.03(j)(3), Council must act within 120 days from the date of the HRC and Planning Commission recommendations. The most reasonable interpretation is that the 120 days begin to run after Council's receipt of the HRC's and Planning Commission's recommendations. Moreover, Council's interpretation of its own statutes and regulations is entitled to great weight and deference when acting reasonably within its authority and this Court should not substitute its own judgment for that of Council unless it is exceeding its legal authority or it is clearly erroneous. *See, e.g.*, *Marcellus Shale Coalition v. Department of Environmental Protection*, 193 A.3d 447, 462-63 (Pa. Cmwlth. 2018).

However, the trial court reasonably held that, pursuant to Section 1101.03(i)(4) and (j)(3) of the Code, the City must act within 120 days from the date of the HRC's and Planning Commission's recommendations. That interpretation is the only reasonable interpretation that prevents an irreconcilable application of these subsections and promotes the legislative intent that City Council take prompt action on an approved historic designation. Contrary to Council's assertions, the trial court did not hold that notice of the HRC's and

9

Planning Commission's recommendations by one Councilman was sufficient to confer notice on the entire City Council. Rather, the trial court noted that the Code does not explicitly require receipt of notice by a quorum of Council and held that a reasonable interpretation of "receipt" included the instant circumstances in which a Councilman and two Council Attorneys were served with correspondence stating that the HRC and Planning Commission had approved the designation and stated that Council would render a decision within 120 days. R.R. at 407a-408a. The trial court's holding conforms to the common practice that notice to attorneys constitutes notice to their clients.

"[N]otice by a court, board or Commission given to the counsel of a party is considered notice to the party. *Yeager v. United Natural Gas Co.*, [176 A.2d 455 (Pa. Super. 1961)]. *Cf. Beekhuis v. Zoning Hearing Board of Middletown*, [429 A.2d 1231 (Pa. Cmwlth. 1981)] (no valid issuance of notice of board's decision to dismiss appeal attacking the validity of the requirement of a minimum of one acre for each single-family dwelling built on property zoned R–2 residential until appellants' counsel notified)." *Ozark v. Zoning Hearing Board of Borough of West Pittston*, 507 A.2d 932, 934 (Pa. Cmwlth. 1986).

Under Section 213(a) of the City's Home Rule Charter, the City Solicitor "shall . . . act as attorney for the City as a municipal corporation [and] for council . . except when council . . . authorized to do so by this charter chooses to use its own counsel[.]" The Director of City Planning's February 7, 2013 letter states that it is "meant to inform [] that the City's Planning Commission has made a recommendation to City Council to expand the [] Historic District," and that "[p]reviously, the [HRC] . . . decided to recommend to City Council that the district be expanded, but with a reduced boundary." R.R. at 155a. The letter also

10

states that "the matter will now be taken to City Council, who will vote on the expansion of the historic district within one hundred twenty (120) days," and indicates that copies were sent to a specific Councilman and two of City Council's attorneys, *i.e.*, the City Solicitor and an Assistant City Solicitor. *Id.* Under these circumstances, the trial court did not err in determining that City Council failed to act timely under Section 1101.03(i)(4) of the Code, and that the Resolution was, therefore, deemed approved under Section 1101.03(j)(3) of the Code.

Moreover, the City Council's position that a notice is not "received" by Council until filed with the City Clerk and presented to a quorum of Council members is untenable. There are no such explicit requirements in Section 1101.03 of the Code and it is unreasonable for this Court to read them into that Section.[9]

---

[9] As this Court has explained:

> Pursuant to the Statutory Construction Act [of 1972], "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the [legislative body]. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. §1921(a). In pursuing that end, we are mindful that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. §1921(b). Further, in ascertaining and effectuating legislative intent, "we do not interpret statutory words or phrases in isolation, but must read them with reference to the context in which they appear."

> "Often, the best indicator of legislative intent is the plain language of the statute." It is only when "the words of the statute are not explicit" on the point at issue that resort to statutory construction is appropriate. 1 Pa. C.S. §1921(c). Additionally, in ascertaining legislative intent, the Statutory Construction Act "requires a presumption that the [legislative body] did not intend a result that is absurd or unreasonable." 1 Pa. C.S. §1922(1).

**(Footnote continued on next page…)**

11

*See Schaefer v. Commonwealth*, 318 A.2d 365, 368 (Pa. Cmwlth. 1974) ("For us to adopt the reasoning and reach the result urged by the plaintiff would be 'to add to the statute a requirement which the Legislature did not see fit to include.' *Olyphant Borough School District v. American Surety Co.*, [184 A. 758, 761 (Pa. 1936)].").

As explained by the trial court, Council's interpretation would lead to an absurd result because the 120-day limitation in Section 1101.03 would never be triggered if the recommendations were never presented to a quorum of Council thereby, potentially tolling indefinitely the requirements of Section 1101.03(i)(4) and (j)(3). R.R. at 408a. Therefore, the trial court properly rejected Council's proposed interpretation of Code Section 1101.03 by adding requirements not explicitly provided therein.

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

_____
**(continued…)**

> In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. §1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. §1921(a).

*Western Pennsylvania Annual Conference of the United Methodist Church*, 188 A.3d at 642-43 (citations omitted).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kirk B. Burkley, Todd L. Kilgore and Jeffrey Diurba | : : : | |
| v. | : | No. 37 C.D. 2019 |
| Council of the City of Pittsburgh, | : : : : | |
| Appellant | : | |

**O R D E R**

AND NOW, this 24th day of October, 2019, the order of the Allegheny County Court of Common Pleas, dated December 12, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge